**DYKEMA GOSSETT LLP**
Gregory K. Jones (SBN #181072)
*gjones@dykema.com*
333 South Grand Avenue, Suite 2100
Los Angeles, California 90071
Telephone: (213) 457-1800
Facsimile: (213) 457-1850

Attorneys for Thornburg Mortgage Securities Trust 2007-3, Mortgage Backed Notes, Series 2007-3, U.S. Bank National Association, as Indenture Trustee, Successor in Interest to Bank of America National Association, as Indenture Trustee, Successor by Merger to LaSalle Bank National Association, as Indenture Trustee, by Nationstar Mortgage LLC as Servicer with Delegated Authority Under the Transaction Documents

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

In re

Semar Ventures, LLC,

Debtor.

Case No. 2:15-bk-12851-RN

Chapter 7

**SUBMISSION OF DECLARATIONS IN SUPPORT OF MOTION FOR RELIEF FROM STAY**

Hearing:

Date: January 5, 2016
Time: 9:30 a.m.
Ctrm: 1645





DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CA 90071

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CA 90071

**TO THE HONORABLE RICHARD M. NEITER, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE DEBTOR, AND OTHER PARTIES IN INTEREST:**

In support of its "Notice of Motion and Motion for Relief from the Automatic Stay Under 11 U.S.C. § 362 (Action in Nonbankruptcy Forum)" (the "Motion"), Thornburg Mortgage Securities Trust 2007-3, Mortgage Backed Notes, Series 2007-3, U.S. Bank National Association, as Indenture Trustee, Successor in Interest to Bank of America National Association, as Indenture Trustee, Successor by Merger to LaSalle Bank National Association, as Indenture Trustee, by Nationstar Mortgage LLC as Servicer with Delegated Authority Under the Transaction Documents ("Thornburg") hereby submits the following declarations, which were filed in the case entitled *Thornburg Mortgage Securities Trust 2007-3, Mortgage Backed Notes, Series 2007-3, U.S. Bank National Association, as Indenture Trustee, Successor in Interest to Bank of America National Association, as Indenture Trustee, Successor by Merger to LaSalle Bank National Association, as Indenture Trustee, by Nationstar Mortgage LLC as Servicer with Delegated Authority Under the Transaction Documents v. Hooman Moshar; Newport Design Associates, Inc.; Real Time Resolutions, Inc.; Pelican Crest II Community Association; Newport Coast Community Association; Sima Noorahani; Semar Venture, LLC; and Does 1-100, inclusive,* Case No. 30-2014-00738233-CU-OR-CJC, pending in the Superior Court for the State of California for the County of Orange (the "State Court Case"):

1.      Declaration of Hooman Moshar in Support of Application for Entry of Default Judgment, filed on October 19, 2015 in the State Court Case; and

2.      Declaration of Dan Dickey in Support of Application for Entry of Default Judgment, filed on October 19, 2015 in the State Court Case.

SUBMISSION OF DECLARATIONS

4847-3702-9420.1
ID\JONES, GREGORY - 084912\000418

Dated: December 10, 2015                    DYKEMA GOSSETT LLP


By: /s/ Gregory K. Jones
Attorneys for Attorneys for Thornburg Mortgage
Securities Trust 2007-3, Mortgage Backed Notes,
Series 2007-3, U.S. Bank National Association, as
Indenture Trustee, Successor in Interest to Bank of
America National Association, as Indenture Trustee,
Successor by Merger to LaSalle Bank National
Association, as Indenture Trustee, by Nationstar
Mortgage LLC as Servicer with Delegated Authority
Under the Transaction Documents

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CA 90071

SUBMISSION OF DECLARATIONS

4847-3702-9420.1
ID\JONES, GREGORY - 084912\000418

**EXHIBIT A**

1   **DYKEMA GOSSETT LLP**
    Lukas Sosnicki (SBN 295895)
2   lsosnicki@dykema.com
    Ashley R. Fickel (SBN 237111)
3   afickel@dykema.com
    333 South Grand Avenue, Suite 2100
4   Los Angeles, CA 90071
    Telephone: (213) 457-1800
5   Facsimile: (213) 457-1850

6   Attorneys for Plaintiff
    THORNBURG MORTGAGE SECURITIES TRUST 2007-3, MORTGAGE BACKED NOTES,
7   SERIES 2007-3, U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE,
    SUCCESSOR IN INTEREST TO BANK OF AMERICA NATIONAL ASSOCIATION, AS
8   INDENTURE TRUSTEE, SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL
    ASSOCIATION, AS INDENTURE TRUSTEE, BY NATIONSTAR MORTGAGE LLC AS
9   SERVICER WITH DELEGATED AUTHORITY UNDER THE TRANSACTION
    DOCUMENTS

10

11              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12                    **FOR THE COUNTY OF ORANGE**

13   THORNBURG MORTGAGE SECURITIES        | Case No. 30-2014-00738233-CU-OR-CJC
     TRUST 2007-3, MORTGAGE BACKED        | (Assigned to the Hon. Frederick Horn,
14   NOTES, SERIES 2007-3, U.S. BANK      | Dept. C31)
     NATIONAL ASSOCIATION, AS INDENTURE   |
15   TRUSTEE, SUCCESSOR IN INTEREST TO    | **DECLARATION OF HOOMAN MOSHAR**
     BANK OF AMERICA NATIONAL             | **IN SUPPORT OF APPLICATION FOR**
16   ASSOCIATION, AS INDENTURE TRUSTEE,   | **ENTRY OF DEFAULT JUDGMENT**
     SUCCESSOR BY MERGER TO LASALLE       |
17   BANK NATIONAL ASSOCIATION, AS        | Date:      November 18, 2015
     INDENTURE TRUSTEE, BY NATIONSTAR     | Time:      1:30 p.m.
18   MORTGAGE LLC AS SERVICER WITH        | Dept.:     C31
     DELEGATED AUTHORITY UNDER THE        |
19   TRANSACTION DOCUMENTS,               | **[Filed Concurrently with Application For**
                                          | **Default Judgment; Declarations of Dan**
20              Plaintiff,                | **Dickey and Ashley R. Fickel and Judgment**
                                          | **Of Foreclosure And Order Of Sale]**
21        v.                              |
                                          | Complaint Filed:  August 5, 2014
22   HOOMAN MOSHAR; NEWPORT DESIGN        | Trial Date:       January 4, 2016
     ASSOCIATES, INC.; REAL TIME          |
23   RESOLUTIONS, INC.; PELICAN CREST II  |
     COMMUNITY ASSOCIATION; NEWPORT       |
24   COAST COMMUNITY ASSOCIATION; SIMA    |
     NOORAHANI; SEMAR VENTURES, LLC;      |
25   and DOES 1-100, inclusive,           |
                                          |
26              Defendants.               |

27

28

DECLARATION OF HOOMAN MOSHAR

**DECLARATION OF HOOMAN MOSHAR**

I, Hooman Moshar, do declare and state as follows:

1.    I am a resident of Orange County, California and over the age of eighteen. I make this declaration in support of Plaintiff's Application for Default Judgment. I have personal knowledge of the following facts, and if called upon to testify, I could and would competently testify thereto.

2.    In or about March 2006, I acquired a luxury residence located at 21 Skyridge, Newport Coast, California (the "Property").

3.    On May 25, 2006, I refinanced my original mortgage loan and obtained the subject $5,160,000 adjustable-rate loan from Countrywide Home Loans (the "Loan"). A true and correct copy of the Adjustable Rate Note evidencing the Loan is attached hereto as Exhibit A.

4.    On or about May 25, 2006, I made, executed, and delivered to Countrywide a Deed of Trust as security for repayment of the Note, which was recorded on May 31, 2006, in the Orange County Recorder's Office, Instrument No. 2006000365535 (the "Deed of Trust"). A true and correct copy of the Deed of Trust is attached hereto as Exhibit B.

5.    In or around October 2006, I listed the Property for sale.

6.    I began negotiating the sale of the Property with John Kia who was the principal of an entity called Semar Ventures LLC ("Semar").

7.    In or about February 2007, I reached a deal with Mr. Kia to sell the Property to Semar.

8.    On or about February 14, 2007, Moshar executed a grant deed that purported to transfer ownership of the Property. A true and correct copy of the grant deed is attached hereto as Exhibit C.

9.    On the same day, I recorded a deed of trust purporting to secure a loan in the amount of $7,125,000 to Semar. A true and correct copy of the deed of trust is attached hereto as Exhibit D.

10.    Under the terms of the sale, Semar made payments directly to the then-servicer of the Loan, Countrywide Bank, FSB ("Countrywide").

11.    However, I continued to receive all statements and notices from Countrywide.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CA 90071

2

12.    Semar failed to make the October 1, 2008 payment on the Loan. I did not make this payment either. As a result, the Loan was in default by October 2, 2008.

13.    As consideration for Plaintiff dismissing with prejudice the causes of action for deficiency judgment and breach of contract in the First Amended Complaint [2 and 3], I do not contest the current foreclosure action by Plaintiff, nor do I contend that I have superior claim to the Property by way of my February 14, 2007 deed of trust.

14.    On May 11, 2015, I executed a quit claim deed transferring any interest that I might have in the Property to Plaintiff. A true and correct copy of the quit claim deed is attached hereto as Exhibit E.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 22 day of September, 2015 at 1:30 PM, California.

Hooman Moshar

PAS01\856278.1
084912\000418

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CA 90071

3
DECLARATION OF HOOMAN MOSHAR

# EXHIBIT A

(Page 2 of 53)

Prepared by: SHERI BRENNECKE

LOAN #: 136276102

# ADJUSTABLE RATE NOTE
## (MTA - Twelve Month Average Index - Payment Caps)

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THIS NOTE.**

| MAY 25, 2006 | SAN DIEGO | CALIFORNIA |
|---|---|---|
| [Date] | [City] | [State] |

21 Skyridge, Newport Coast, CA 92657-1815
[Property Address]

**1.  BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 5,160,000.00    (this amount is called "Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided under the terms of this Note but will never exceed    115   percent of the Principal amount I originally borrowed. This is called the "Maximum Limit." Lender is COUNTRYWIDE HOME LOANS, INC.

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.  INTEREST**

**(A)  Interest Rate**

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. Up until the first day of the calendar month that immediately precedes the first monthly payment due date set forth in Section 3 of this Note, I will pay interest at a yearly rate of    8.125 %.  Additional days interest collected prior to the first monthly payment due date is sometimes called "Per Diem" interest and is due at the time I close my loan. Thereafter until the first Interest Rate Change Date, defined below in Section 2(B), I will pay interest at a yearly rate of    2.250  %. This rate is sometimes referred to as the "Start Rate" and is used to calculate the initial monthly payment described in Section 3.  The interest rate required by this Section 2 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**(B)  Interest Rate Change Dates**

The interest rate I will pay may change on the first         day of JULY, 2006              , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

**(C)  Index**

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates

● PayOption ARM Note - MTA Index
1E306-XX (12/05)(d)                              Page 1 of 5





610  136276102  N   001  001

(Page 3 of 53)

LOAN #: 136276102

(H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D)  Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding FOUR                              percentage point(s)    4.000 ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than    9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

**3.   PAYMENTS**

**(A)  Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the first                day of each month beginning on JULY 01, 2006          . I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   JUNE 01, 2046         , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at

P.O. Box 10219, Van Nuys, CA 91410-0219

or at a different place if required by the Note Holder.

**(B)  Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $16,312.94        , unless adjusted under Section 3(F).

**(C)  Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the first                day of JULY, 2007       , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D)  Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than    7.500% of my prior monthly payment. This    7.500% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number    1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment.

**(E)  Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date

♦ PayOption ARM Note - MTA Index

1E306-XX (12/05)                                 Page 2 of 5

Exhibit A - Page 9

(Page 4 of 53)

LOAN #: 136276102

in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

**(F)   Limit on My Unpaid Principal; Increased Monthly Payment**
My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED FIFTEEN    percent ( 115 %) of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my Minimum Payment would cause me to exceed that limit, I will instead pay a new Minimum Payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G)   Required Full Payment**
On the tenth        Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H)   Payment Options**
After the first Interest Rate Change Date, the Note Holder may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." The Payment Options are calculated using the new interest rate in accordance with Section 2(D). I may be given the following Payment Options:
    (i)   **Interest Only Payment:**  the amount that would pay the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.
    (ii)   **Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.
    (iii)   **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.
These Payment Options are only applicable if they are greater than the Minimum Payment.

**4.   NOTICE OF CHANGES**
The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.   BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.
I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.   LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me

(Page 5 of 53)

LOAN #: 136276102

that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

### 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

**(A)  Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any Minimum Payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      5.000 % of the Minimum Payment. I will pay this late charge promptly but only once on each late payment.

**(B)  Default**

If I do not pay the full amount of each Minimum Payment on the date it is due, I will be in default.

**(C)  Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the Minimum Payment by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)  No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

### 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

### 10.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 11.  SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond

● **PayOption ARM Note - MTA Index**

1E306-XX (12/05)                               Page 4 of 6

(Page 6 of 53)

LOAN #: 136276102

for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____                                    _____
HOOMAN  MOSHAR                                                                            - Borrower

_____                                    _____
                                                                                                      - Borrower

_____                                    _____
                                                                                                      - Borrower

_____                                    _____
                                                                                                      - Borrower

PAY TO THE ORDER OF
WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS INC
BY_____
David A. Spector
Managing Director

♦ PayOption ARM Note - MTA Index
1E308-XX (12/05)                                            Page 5 of 5

# EXHIBIT B

(Page 1 of 26)

RECORDING REQUESTED BY-
Ticor Title- San Diego Branch

Recording Requested By:
M. PHILIPS

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O. Box 10423
Van Nuys, CA 91410-0423
Prepared By:
SHERI BRENNECKE

2232097 TC

**This Document was electronically recorded by
California Hall Service A**

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

81.00
2006000365535 03:30pm 05/31/06
103 200 D11 26
0.00 0.00 0.00 0.00 75.00 0.00 0.00 0.00

009015578    MOSHAR    H

610  136276102  D2  001  001

———————— [Space Above This Line For Recording Data] ————————

2232097                    00013627610205006
(Escrow/Closing #)              [Doc ID #]

# DEED OF TRUST

MIN 1001337-0001416728-5

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3,
11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in
Section 16.

(A) "Security Instrument" means this document, which is dated MAY 25, 2006          , together
with all Riders to this document.
(B) "Borrower" is
HOOMAN MOSHAR, A MARRIED MAN AS HIS SOLE & SEPARATE PROPERTY

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Page 1 of 16
VMP®-6A(CA) (0207)    CHL (08/05)(d)    VMP Mortgage Solutions, Inc. (800)521-7291         Form 3005 1/01
CONV/VA

* 2 3 9 9 1 *                         * 1 3 6 2 7 6 1 0 2 0 0 0 0 0 1 0 0 6 A *

(Page 2 of 26)

DOC ID #: 00013627610205006

Borrower's address is
21 Skyridge, Newport Coast, CA 92657-1815
Borrower is the trustor under this Security Instrument.
(C) "Lender" is
COUNTRYWIDE HOME LOANS, INC.
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613
(D) "Trustee" is
RECONTRUST COMPANY, N.A.
225 W HILLCREST DRIVE, MSN: TO-02, THOUSAND OAKS, CA 91360
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated MAY 25, 2006        . The Note states that Borrower owes Lender
FIVE MILLION ONE HUNDRED SIXTY THOUSAND and 00/100

Dollars (U.S. $ 5,160,000.00      ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  JUNE 01, 2046         .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [X] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |
| | | PUD |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

(Page 3 of 26)

DOC ID #: 00013627610205006

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
            COUNTY                    of               ORANGE                      :
        [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]
LOT (S) 12 OF TRACT 15604, IN THE CITY OF NEWPORT BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 773 PAGE(S) 1 TO 9 INCLUSIVE, OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA, AND AS AMENDED BY CERTIFICATE OF CORRECTION RECORDED JUNE 26, 2001 AS INSTRUMENT NO. 01-422896, OFFICIAL RECORDS.

Parcel ID Number: 47314212                                which currently has the address of
            21 Skyridge, Newport Beach                               ,
                            [Street/City]
California 92657-1815 ("Property Address"):
        [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

DOC ID #: 00013627610205006

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

(Page 5 of 26)

DOC ID #: 00013627610205006

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

(Page 6 of 26)

DOC ID #: 00013627610205006

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

DOC ID #: 00013627610205006

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

(Page 8 of 26)

DOC ID #: 00013627610205006

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

VMP® -6A(CA) (0207)        CHL (08/05)              Page 8 of 16                          Form 3005 1/01

DOC ID #: 00013627610205006

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

DOC ID #: 00013627610205006

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

DOC ID #: 00013627610205006

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

(Page 12 of 26)

DOC ID #: 00013627610205006

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

DOC ID #: 00013627610205006

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

VMP®-6A(CA) (0207)          CHL (08/05)          Page 13 of 16          Form 3005 1/01

(Page 14 of 26)

DOC ID #: 00013627610205006

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

VMP® -6A(CA) (0207)        CHL (08/05)            Page 14 of 16                        Form 3005 1/01

Exhibit A - Page 27

(Page 15 of 26)

DOC ID #: 00013627610205006

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
HOOMAN MOSHAR                    -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

-6A(CA) (0207)      CHL (08/05)      Page 15 of 16               Form 3005 1/01

Exhibit A - Page 28

(Page 16 of 26)

DOC ID #: 00013627610205006

State of California
County of *San Diego*

On *5/25/06* before me, *Ashley Kay Stewart, Notary Public*,
personally appeared
*Hooman Mashian*

_____, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)



ASHLEY KAY STEWART
Commission # 1487425
Notary Public - California
San Diego County
My Comm. Expires May 3, 2008



ASHLEY KAY STEWART
Commission # 1487425
Notary Public - California
San Diego County
My Comm. Expires May 3, 2008

VMP®-6A(CA) (0207)    CHL (08/05)        Page 16 of 16                    Form 3005 1/01

Exhibit A - Page 29

(Page 17 of 26)

# PLANNED UNIT DEVELOPMENT RIDER

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423


Prepared By:
SHERI BRENNECKE


2232097                 00013627610205006
[Escrow/Closing #]         [Doc ID #]

THIS PLANNED UNIT DEVELOPMENT RIDER is made this TWENTY-FIFTH       day of
MAY, 2006        , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the

MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®-7R (0411)    CHL (11/04)(d)       Page 1 of 4              Initials: _____
                    VMP Mortgage Solutions, Inc. (800)521-7291          Form 3150 1/01

* 23991 *                              * 1 3 6 2 7 6 1 0 2 0 0 0 0 0 1 0 0 7 R *

DOC ID #: 00013627610205006

undersigned (the "Borrower") to secure Borrower's Note to
COUNTRYWIDE HOME LOANS, INC.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

21 Skyridge
Newport Coast, CA 92657-1815
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in
THE COVENANTS, CONDITIONS, AND RESTRICTIONS FILED OF RECORD
THAT AFFECT THE PROPERTY

(the "Declaration"). The Property is a part of a planned unit development known as
PELICAN CREST COMMUNITY ASSOC

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

Initials: _____

DOC ID #: 00013627610205006

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials: _____

VMP®-7R (0411)      CHL (11/04)      Page 3 of 4      Form 3150 1/01

(Page 20 of 26)

DOC ID #: 00013627610205006

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)
HOOMAN MOSHAR                                                      - Borrower

_____ (Seal)
                                                                                 - Borrower

_____ (Seal)
                                                                                 - Borrower

_____ (Seal)
                                                                                 - Borrower

VMP®-7R (0411)          CHL (11/04)          Page 4 of 4                    Form 3150 1/01

(Page 21 of 26)

# ADJUSTABLE RATE RIDER
### (PayOption MTA Twelve Month Average Index - Payment Caps)

2232097                00013627610205006
[Escrow/Closing #]          [Doc ID #]

THIS ADJUSTABLE RATE RIDER is made this  TWENTY-FIFTH       day of
MAY, 2006         , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
COUNTRYWIDE HOME LOANS, INC.

("Lender") of the same date and covering the property described in the Security Instrument and
located at:

21 Skyridge
Newport Coast, CA 92657-1815
[Property Address]

THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE
MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY
PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD
BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE
MAXIMUM LIMIT STATED IN THE NOTE.

ADDITIONAL COVENANTS: In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for changes in the interest rate and the monthly payments, as follows:

• PayOption MTA ARM Rider
1E310-XX (09/05)(d)                    Page 1 of 6





(Page 22 of 26)

DOC ID #: 0001362761020

## 2. INTEREST

### (A)  Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. Up until the first day of the calendar month that immediately precedes the first monthly payment due date set forth in Section 3 of the Note, I will pay interest at a yearly rate of    8.125 %. Additional days interest collected prior to the first monthly payment due date is sometimes called "Per Diem" interest and is due at the time I close my loan. Thereafter until the first Interest Rate Change Date, defined below in Section 2(B), I will pay interest at a yearly rate of    2.250 %. This rate is sometimes referred to as the "Start Rate" and is used to calculate the initial monthly payment described in Section 3.  The interest rate required by this Section 2 of the Note is the rate I will pay both before and after any default described in Section 7(B) of the Note.

### (B) Interest Rate Change Dates

The interest rate I will pay may change on the first           day of JULY, 2006              , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

### (C) Index

Beginning with the first Interst Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (D) Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding                 FOUR percentage point(s) (    4.000 %) ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than    9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month.

• **PayOption MTA ARM Rider**
**1E310-XX (09/05)**                  Page 2 of 6

(Page 23 of 26)

DOC ID #: 0001362761020 5006

I will make my monthly payments on the FIRST          day of each month
beginning on July, 2006          . I will make these payments every month until I have
paid all the Principal and interest and any other charges described below that I may owe under the
Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before Principal. If, on  JUNE 01, 2046          , I still owe amounts under the Note, I will pay
those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**
Each of my initial monthly payments until the first Payment Change Date will be in the amount of
U.S. $ 16,312.94          , unless adjusted under Section 3 (F).

**(C) Payment Change Dates**
My monthly payment may change as required by Section 3(D) below beginning on the
first          day of JULY, 2007          , and on that day every 12th
month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also
will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment.
The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment
which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If
the Minimum Payment is not sufficient to cover the amount of the interest due then negative
amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment
Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**
At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of
the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe
at the Payment Change Date in full on the maturity date in substantially equal payments at the interest
rate effective during the month preceding the Payment Change Date. The result of this calculation is
called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment
effective on a Payment Change Date, will not increase by more than   7.500% of my prior
monthly payment. This          7.500% limitation is called the "Payment Cap." This Payment Cap
applies only to the Principal and interest payment and does not apply to any escrow payments Lender
may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the
amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying
it by the number          1.075 . The result of this calculation is called the "Limited Payment." Unless
Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be
the lesser of the Limited Payment and the Full Payment.

• PayOption MTA ARM Rider
1E310-XX (09/05)                          Page 3 of 6

(Page 24 of 26)

DOC ID #: 00013627610205006

**(E) Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED FIFTEEN percent (    115 %) of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my Minimum Payment would cause me to exceed that limit, I will instead pay a new Minimum Payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G) Required Full Payment**

On the tenth            Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H) Payment Options**

After the first Interest Rate Change Date, the Note Holder may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." The Payment Options are calculated using the new interest rate in accordance with Section 2(D). I may be given the following Payment Options:

(i) **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) **Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

• PayOption MTA ARM Rider
1E310-XX (09/05)            Page 4 of 6

(Page 25 of 26)

DOC ID #: 00013627610205006

(iii) **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by

• **PayOption MTA ARM Rider**
1E310-XX (09/05)                    Page 5 of 6

(Page 26 of 26)

DOC ID #: 00013627610205006

this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period,
Lender may invoke any remedies permitted by this Security Instrument without further notice or
demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in
this Adjustable Rate Rider.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____

HOOMAN MOSHAR                                          -Borrower

_____

                                                       -Borrower

_____

                                                       -Borrower

_____

                                                       -Borrower

* PayOption MTA ARM Rider
1E310-XX (09/05)              Page 6 of 6

# EXHIBIT C

RECORDING REQUESTED BY
NEW CENTURY TITLE COMPANY

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

RECORDING REQUESTED BY:
NEW CENTURY TITLE

12.00

2007000101031 04:30pm 02/14/07

AND WHEN RECORDED MAIL TO:
Semar Ventures LLC
1802 No. Carson  #212
Carson City, NV 89701

105 48 G02 3

0.00 0.00 0.00 0.00 0.00 6.00 0.00 0.00 0.00

Order No.: 9070290
Escrow No.: SA-113773-CW
A.P.N.: 473-142-12

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE

### GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S)
DOCUMENTARY TRANSFER TAX IS $
[]      computed on full value of property conveyed, or
[ XX ]  computed on full value less value of liens or encumbrances remaining at time of sale.
[]      unincorporated area    [ XX ] City of Newport Beach, AND

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**Hooman Moshar, a married man**

hereby GRANT(S) to

**Semar Ventures LLC, a Nevada Limited Liability Company**

the following described real property in the County of Orange, State of California:
Lot 12 of Tract No. 15604, in the City of Newport Beach, County of Orange, State of
California, as per map recorded in Book 773, Page(s) 1-9, inclusive, of Miscellaneous Maps,
in the office of the County Recorder of said County. (See Exhibit "A" attached hereto for
legal description)

Dated: February 5, 2007

STATE OF CALIFORNIA
COUNTY OF _Orange_          } ss.
On _Feb 12, 2007_                 before me
_Jenny J. Kim_
Notary Public, personally appeared
_Hooman Moshar_

Hooman Moshar

personally known to me (or proved to me on the basis
of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies) and that
by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the
person(s), acted, executed the instrument.

JENNY J. KIM
COMM. # 1583932
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
COMM. EXP. JUNE 9, 2009

WITNESS my hand and official seal.

Signature _____
            Signature of Notary
Commission Expiration Date: _6/9/2009_

(This area for official notarial seal)

MAIL TAX STATEMENTS TO:  Semar Ventures LLC, 1802 No. Carson  #212, Carson City, NV 89701



## GOVERNMENT CODE 27361.7

I CERTIFY UNDER PENALTY OF PERJURY THAT THE
NOTARY SEAL ON THE DOCUMENT TO WHICH THIS
STATEMENT IS ATTACHED READS AS FOLLOWS:

NAME OF NOTARY                          :   JENNY J. KIM

COMMISSION NUMBER                       :   1583932

DATE COMMISSION EXPIRES                 :   6-9-09

COUNTY WHERE BOND IS FILED              :   O.C.

MANUFACTOR/VENDOR NUMBER  :   MGCI

PLACE OF EXECUTION                      :   O.C.

DATE                                    :   2-14-07

SIGNATURE

Order No. 9070290

Exhibit "A"

Parcel 1:

Lot(s) 12 of Tract No. 15604, in the City of Newport Beach, County of Orange, State of California, as shown on a Map recorded in Book 773 Page(s) 1 to 9 inclusive of Miscellaneous Maps, records of Orange County, California and as amended by Certificate of Correction recorded June 26, 2001 as Instrument No. 01-422896 Official Records.

Excepting therefrom all oil, oil rights, minerals, mineral rights, natural gas rights, and other hydrocarbons by whatsoever name known, geothermal steam and other geothermal resources defined in California Public Resources Code Section 6903, et seq., that may be within or under the parcels of land hereinabove described, together with the perpetual rights of drilling, mining, exploring and operating therefor, and storing in and removing the same from said land or any other land, including the right to whipstock or directionally drill and mine from lands other than those hereinabove described, oil, or gas wells, tunnels and shafts into, through or across the subsurface of the land hereinabove described, and to bottom such whipstocked or directionally drilled wells, tunnels and shafts under and beneath or beyond the exterior limits thereof, and to re-drill, re-tunnel, equip, maintain, repair, deepen and operate any such wells or mines without, however, the right to drill, mine, store, explore and operate through the surface or the upper 500 feet of the subsurface of said land, as reserved in deed recorded January 2, 1997, Instrument No. 97-564 of Official Records.

Parcel 2:

Easements as set forth in the Section entitled "Easements for Owners", "Support, Settlement and Encroachment: and "Utilities and Cable Television" of the Article "Easements and other Rights over the Covered Property" of the Declaration of Covenants, Conditions and Restrictions for Pelican Crest II Community Association, recorded October 9, 1998 as Instrument No. 98-°687222 of Official Records of Orange County, California (Collectively the "Declaration").

Parcel 3:

Easements as set forth in the subsection entitled "Pedestrian Trail" of the Section entitled "Reservation to Declarant and Participating Builder" and in the sections entitled "Easements for Owners", "Support, Settlement and Encroachment" and "Utilities and Cable Television" of the article entitled "Easements and Rights" of the Declaration of Covenants, Conditions and Restrictions for Newport Coast Community Association, recorded May 24, 1991 as Instrument No. 91-247521 Official Records of Orange County, California, (The "Master Declaration",) and in the Supplemental Declaration of Covenants, Conditions and Restrictions for Newport Coast Community Association and Pelican Crest II (Phase I), recorded October 9, 1998 as Instrument No. 98-686540 Official Records.

# EXHIBIT D

RECORDING REQUESTED BY
NEW CENTURY TITLE COMPANY

RECORDING REQUESTED BY:

NEW CENTURY TITLE

AND WHEN RECORDED MAIL TO:

Hooman Moshar
25726 Dillon Road
Laguna Hills, CA 92653

Order No.:  9070290
Escrow No.:  SA-113773-CW

Recorded in Official Records, Orange County

Tom Daly, Clerk-Recorder

33.00

2007000101032 04:30pm 02/14/07

105 40 D11 A30 R23 6

0.00 0.00 0.00 0.00 15.00 0.00 0.00 0.00

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE

## ALL INCLUSIVE DEED OF TRUST; ASSIGNMENT OF RENTS;
## AND REQUEST FOR NOTICE
## (LONG FORM)

This DEED OF TRUST, made Feb. 1, 2007, between Semar Ventures LLC, a Nevada Limited Liability Company, herein called TRUSTOR, whose address is 1802 No. Carson #212, Carson City, NV 89701,

Burrow Escrow Services, Inc., a California Corporation, herein called TRUSTEE, and Hooman Moshar, a married man, herein called BENEFICIARY, WITNESSETH: That Trustor grants to Trustee in trust, with power of sale, that property in the City of Newport Beach, County of Orange, State of California, described as:

Lot 12 of Tract No. 15604, in the City of Newport Beach, County of Orange, State of California, as per map recorded in Book 773, Page(s) 1-9, inclusive, of Miscellaneous Maps, in the office of the County Recorder of said County. (See Exhibit "A" attached hereto for legal description)

In the event Trustor sells, conveys, or alienates title to property described herein, whether voluntarily or involuntarily, all sums then owing under the Note secured hereby shall become immediately due and payable, at the option of the Holder(s) thereof. Notwithstanding the aforementioned, the Beneficiary will consent to a one (1) time transfer of the property to a subsequent purchaser and/or transferee of the property.

The Beneficiary agrees to subordinate the Beneficiary's Equity (as defined in the Note of even date herewith which this Deed of Trust secures) based on limited circumstances as set forth in the Note.

Trustor also assigns to Beneficiary all rents, issues and profits of said property reserving the right to collect and use the same except during continuance of default hereunder and during continuance of such default authorizing Beneficiary to collect and enforce the same by any lawful means in person, or by receiver to be appointed by a court.

This is an all-inclusive deed of trust subject and subordinate to deed(s) of trust encumbering said land and more particularly identified in the Request for Notice set forth on Page 2 and hereinafter referred to as "included deeds of trust", securing notes, hereinafter referred to as "included notes".

Trustor requests that any notice of default and any notice of sale hereunder be mailed to Trustor at the address hereinafter set forth. The execution by or on behalf of Trustor of this deed of trust shall also constitute a signing by or on behalf of Trustor of this:

(X) *said deed of trust by its terms is all inclusive in nature* (X)

#39

Page No. 2

## REQUEST FOR NOTICE

In accordance with Section 2924b, Civil Code, request is made that a copy of any Notice of Default and a copy of any Notice of Sale under the Deed of Trust recorded in the office of the Recorder of Orange County, on 5/31/06, as Instrument No. 000 365535 , executed by Hooman Moshar, as Trustor, in which MERS (Countrywide Home Loans) is named as Beneficiary and ReconTrust Company as Trustee; and

Under the Deed of Trust recorded in the Office of the Recorder of Orange County, on 11/9/2006, as Instrument No. 000 756949 , executed by Hooman Moshar, as Trustor, in which MERS (America's Wholesale Lender) is named as Beneficiary and ReconTrust Company as Trustee,

be mailed to Semar Ventures LLC, at 1802 No. Carson, #212, Carson City, NV 89701.

For the purpose of securing:

(1)  Performance of each agreement of Trustor incorporated by reference or contained herein;

(2)  Payment of the indebtedness evidenced by one promissory note of even date herewith, any extensions or renewals thereof in the principal sum of $7,125,000 payable to Beneficiary;

(3)  The payment of any money that may be advanced by the Beneficiary to Trustor, or his successors, with interest thereon, evidenced by additional notes (indicating they are so secured) or by endorsement on the original note, executed by Trustor or his successor.

A.  TO PROTECT THE SECURITY HEREOF, TRUSTOR AGREES:

(1)  To perform the obligations secured by such included deeds of trust other than the payments to be made by Beneficiary as set forth in the note secured by this deed of trust.  As between the parties hereto and their successors and assigns, no assumption or guarantee agreement executed by Trustors for the benefit of the holders of the included notes shall be deemed to affect this obligation of Beneficiary.

(2)  To keep said property in good condition and repair not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefore; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon, not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(3)  To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary.  The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor.  Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(4)  To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including costs of evidence of title and attorney's fees, in a reasonable sum in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(5)  To pay: at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, except those payments to be made by Beneficiary as provided in the note secured hereby, with interest, on said property or any part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(6)  To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

B.  IT IS MUTUALLY AGREED:

(1)  That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such monies received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

Exhibit A - Page 46



Page No. 3

(2)    That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(3)    That at any time or from time to time, without liability therefore and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plate thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(4)    That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention or other disposition as Trustee in its sole discretion may choose and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder.    The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof.    The Grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

(5)    That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable.    Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues, and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine.    The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(6)    That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record.    Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale, Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement.    Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied.    The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof.    Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.    The bid by the holder of this note upon the credit of the money obligations secured hereby; shall be reduced in an amount equivalent to the then unpaid balance of the included notes.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

(7)    That this Deed applies to, insures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns.    The term Beneficiary shall mean the owner and holder, including pledges, of the note secured hereby, whether or not named as Beneficiary herein.    In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(8)    That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law.    Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

(9)    The Trusts created hereby are irrevocable by Trustor.

(10)    Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties.    Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

Exhibit A - Page 47

Page No. 4

STATE OF CALIFORNIA
COUNTY OF _Orange_
On _Feb. 12, 2007_ _____ before me
_Jenny J. Kim_
Notary Public, personally appeared
_John Kia_
_____
personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged
to me that he/she/they executed the same in his/her/their
authorized capacity(ies) and that by his/her/their signature(s)
on the instrument the person(s), or the entity upon behalf of
which the person(s), acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____
            Signature of Notary

} ss.

Signature of Trustor

Semar Ventures LLC

By: John Kia, Manager

JENNY J. KIM
COMM. # 1563932
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
COMM. EXP. JUNE 9, 2009

(This area for official notarial seal)

STATE OF CALIFORNIA
COUNTY OF _Orange_
On _Feb. 12, 2007_ _____ before me
_Jenny J. Kim_
Notary Public, personally appeared
_Hooman Moshar_
_____
personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged
to me that he/she/they executed the same in his/her/their
authorized capacity(ies) and that by his/her/their signature(s)
on the instrument the person(s) or the entity upon behalf of
which the person(s), acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____
            Signature of Notary

} ss.

Signature of Beneficiary

Hooman Moshar

JENNY J. KIM
COMM. # 1563932
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
COMM. EXP. JUNE 9, 2009

(This area for official notarial seal)

**(IT IS RECOMMENDED THAT, PRIOR TO THE EXECUTION OF THIS ALL-INCLUSIVE DEED
OF TRUST, THE PARTIES CONSULT WITH THEIR ATTORNEYS WITH RESPECT TO SAME.)**

Exhibit A - Page 48



### GOVERNMENT CODE 27361.7

I CERTIFY UNDER PENALTY OF PERJURY THAT THE
NOTARY SEAL ON THE DOCUMENT TO WHICH THIS
STATEMENT IS ATTACHED READS AS FOLLOWS:

NAME OF NOTARY          :  JENNY J. KIM

COMMISSION NUMBER       :  1583932

DATE COMMISSION EXPIRES :  6-9-08

COUNTY WHERE BOND IS FILED :  O.C.

MANUFACTOR/VENDOR NUMBER :  MTC1

PLACE OF EXECUTION      :  O.C.

DATE                    :  2-14-07

SIGNATURE

# EXHIBIT E

Recording requested by:

After Recording, Mail To:

Name:
Address:

City:
State:
Zip:

**SEND TAX STATEMENTS TO GRANTEE**

_____

SPACE ABOVE THIS LINE RESERVED FOR OFFICIAL USE

PREPARER: This document, including legal description, prepared/drafted by:      Name:   Lukas Sosnicki
Address:DYKEMA GOSSETT, LLP 333 S. Grand Ave., Ste. 2100           Signature: _____
City/State/Zip: Los Angeles, California 90071                      Phone: (213) 457-1800

Assessor's Property Tax Parcel/Account Number: 47314212

# QUITCLAIM DEED

**KNOW ALL MEN BY THESE PRESENTS THAT:**

THIS QUITCLAIM DEED, executed this __ day of May, 2015, by and between

| GRANTOR | GRANTEE |
|---|---|
| Hooman Moshar an individual, ☒ married ☐ unmarried Tax/Mailing Address: 25726 DILLON RD. LAGUNA HILLS CA. 92653 | NATIONSTAR MORTGAGE LLC, AS SERVICER FOR THORNBURG MORTGAGE SECURITIES TRUST 2007-3, MORTGAGE BACKED NOTES, SERIES 2007-3,U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF AMERICA NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE  Tax/Mailing Address: _____ _____ |

The designation Grantor and Grantee as used herein shall include said parties, their heirs, successors, and assigns, and shall include singular, plural, masculine, feminine or neuter as required by context.

WITNESSETH, That the Grantor, for good consideration and for the sum of One Dollars ($1.00) in hand paid, by Grantee, the receipt of which is hereby acknowledged, does hereby remise, release and quitclaim unto the Grantee all the right, title, interest and claim which the Grantor has in that certain lot or parcel of land situated in the City of Newport Beach, County of Orange, State of California to wit:  **SEE ATTACHED DESCRIPTION OF PROPERTY in Exhibit A hereto.**

THE TOTAL DOLLAR VALUE OF THE CONSIDERATION paid for the property described herein is $1.00.

THE PROPERTY DESCRIBED HEREIN: a) ☐ is not a part of the homestead of Grantor. b) ☐ is a part of the homestead of Grantor, and if Grantor is married, the conveyance is joined by both Grantor and Grantor's spouse who hereby release all rights of dower.

**TO HAVE AND TO HOLD** the same unto Grantee with all appurtenances thereunto belonging.

And Grantor covenants with Grantee that Grantor and any other person, persons, entity or entities in Grantor's name and behalf or claiming under Grantor shall not or will not hereafter claim or demand any right or title to the premises or any part thereof, but they and each of them shall be excluded and forever barred therefrom except as herein set forth.

**IN WITNESS WHEREOF,** The said Grantor has caused these present to be signed by its duly authorized officer on the day and year first above written.

Signature of Grantor
**Hooman Moshar**

Signature of Witness
KIRK HARRISON
Print name of Witness

Signature of Witness
Barry Langfelder
Print name of Witness

State of _California_
County of _Orange_

On _May 11, 2015_ before me, _Barry Langfelder_ , a Notary Public, personally appeared _Hooman Moshar_ , personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity(ies), and that by his/her signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

_See Attached_

Notary Public (Signature)                          Title            (Seal)

                                                    My Commission Expires: _____

Printed Name of Notary

**CALIFORNIA JURAT WITH AFFIANT STATEMENT**          GOVERNMENT CODE § 8202

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

☐ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–6 to be completed only by document signer[s], *not* Notary)

_____                    _____
*Signature of Document Signer No. 1*                *Signature of Document Signer No. 2 (if any)*

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _Orange_

Subscribed and sworn to (or affirmed) before me

on this _11_ day of _May_____, 20_15_
       Date       Month       Year

by

(1) _Hooman Moslar_____

(and (2)_____ ),
            *Name(s) of Signer(s)*

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

BARRY LANGFELDER
COMM...1955172
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Term Exp. Nov. 1, 2015

Signature _____
           *Signature of Notary Public*

*Seal*
*Place Notary Seal Above*

————— **OPTIONAL** —————

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _____    Document Date: _____

Number of Pages: _____ Signer(s) Other Than Named Above: _____

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)    Item #5910

**PROOF OF SERVICE**
*Thornburg Mortgage Securities Trust 2007-3, et al. v. Hooman Moshar, et al.*
*Orange County Central Justice Center Case No. 30-2014-00738233-CU-OR-CJC*

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 333 South Grand Avenue, Suite 2100, Los Angeles, California 90071.

On October 19, 2015, I served the foregoing document described as **DECLARATION OF HOOMAN MOSHAR IN SUPPORT OF APPLICATION FOR ENTRY OF DEFAULT JUDGMENT** on all interested parties in this action as follows:

| | |
|---|---|
| Marc I. Zussman, Esq.<br>LAW OFFICES OF MARC ZUSSMAN<br>10250 Constellation Blvd., Suite 2900<br>Los Angeles, CA  90067<br>Tel:    (310) 881-6804<br>Fax:    (310) 881-6805<br>E-mail: zussman@zussmansecuritieslaw.com | *Attorneys for Defendant*<br>*HOOMAN MOSHAR* |
| Newport Design Associates, Inc.<br>27422 Portola Parkway, Suite 340<br>Foothill Ranch, CA  92610 | *Defendant* |
| Real Time Resolutions, Inc.<br>c/o CT Corporation System, Agent<br>818 West Seventh Street, Suite #930<br>Los Angeles, CA  90017 | *Defendant*<br>*REAL TIME RESOLUTIONS, INC.* |
| Michael C. Fettig, Esq.<br>BERDING & WEIL LLP<br>575 Anton Boulevard, Suite 460<br>Costa Mesa, CA  92626<br>Tel:    (714) 429-0600<br>Fax:    (714) 429-0699 | *Attorneys for Defendant*<br>*PELICAN CREST II COMMUNITY*<br>*ASSOCIATION* |
| Nancy Michael, Esq.<br>NEULAND, WHITNEY & MICHAEL<br>22342-A Avenida Empresa, Suite 100<br>Rancho Santa Margarita, CA  92688<br>Tel:    (949) 766-4700<br>Fax:    (949) 766-4712 | *Attorneys for Defendant*<br>*NEWPORT COAST COMMUNITY ASSOC.* |
| Sima Noorahani<br>28652 Deepcreek<br>Mission Viejo, CA  92692 | *Defendant* |
| Amy A. Mousavi, Esq.<br>MOUSAVI LAW GROUP, APC<br>2020 Main Street, Suite 900<br>Irvine, CA  92614<br>Tel:    (949) 622-8980<br>Fax:    (949) 622-8985<br>Email: amousavi@mousavilagroup.com | *Attorneys for Defendant*<br>*SEMAR VENTURES LLC* |

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

☒ **(BY MAIL)** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. Postal Service on the same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing on affidavit.

☐ **(BY PERSONAL SERVICE)** I caused to be delivered such envelope by hand to the offices of the addressee via Janney & Janney court services.

☐ **(BY ELECTRONIC MAIL)** By consent of recipients listed on the attached service list, I caused the above-named document to be served via e-mail.

☐ **(BY ELECTRONIC SERVICE)** By E-filing and transmission of the above-listed document on all parties via the CM/ECF system with the Court.

☐ **(BY OVERNIGHT SERVICE)** Via Federal Express.

☐ **(BY FACSIMILE)** By transmitting in true copy thereof by facsimile from facsimile number (213) 457-1850 to the facsimile number(s) shown above.

☒ (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 19, 2015, at Los Angeles, California.

_____
LYNN SPENCER

2

PAS01\774557.1
ID\LSO - 084912\000418

**EXHIBIT B**

1   **DYKEMA GOSSETT LLP**
    Lukas Sosnicki (SBN 295895)
2   lsosnicki@dykema.com
    Ashley R. Fickel (SBN 237111)
3   afickel@dykema.com
    333 South Grand Avenue, Suite 2100
4   Los Angeles, CA  90071
    Telephone:  (213) 457-1800
5   Facsimile:  (213) 457-1850

6   Attorneys for Plaintiff
    THORNBURG MORTGAGE SECURITIES TRUST 2007-3, MORTGAGE BACKED NOTES,
7   SERIES 2007-3, U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE,
    SUCCESSOR IN INTEREST TO BANK OF AMERICA NATIONAL ASSOCIATION, AS
8   INDENTURE TRUSTEE, SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL
    ASSOCIATION, AS INDENTURE TRUSTEE, BY NATIONSTAR MORTGAGE LLC AS
9   SERVICER WITH DELEGATED AUTHORITY UNDER THE TRANSACTION
    DOCUMENTS

10

11              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12                    **FOR THE COUNTY OF ORANGE**

13   THORNBURG MORTGAGE SECURITIES          Case No. 30-2014-00738233-CU-OR-CJC
     TRUST 2007-3, MORTGAGE BACKED          (Assigned to the Hon. Frederick Horn,
14   NOTES, SERIES 2007-3, U.S. BANK        Dept. C31)
     NATIONAL ASSOCIATION, AS INDENTURE
15   TRUSTEE, SUCCESSOR IN INTEREST TO      **DECLARATION OF DAN DICKEY IN**
     BANK OF AMERICA NATIONAL               **SUPPORT OF APPLICATION FOR**
16   ASSOCIATION, AS INDENTURE TRUSTEE,     **ENTRY OF DEFAULT JUDGMENT**
     SUCCESSOR BY MERGER TO LASALLE
17   BANK NATIONAL ASSOCIATION, AS          **[Filed Concurrently with Application For**
     INDENTURE TRUSTEE, BY NATIONSTAR       **Default Judgment; Declarations Of Hooman**
18   MORTGAGE LLC AS SERVICER WITH          **Moshar and Ashley Fickel and Judgment Of**
     DELEGATED AUTHORITY UNDER THE          **Foreclosure And Order Of Sale]**
19   TRANSACTION DOCUMENTS,

20              Plaintiff,                  Date:         November 18, 2015
                                            Time:         1:30 p.m.
21        v.                                Dept.:        C31

22   HOOMAN MOSHAR; NEWPORT DESIGN          Complaint Filed:  August 5, 2014
     ASSOCIATES, INC.; REAL TIME            Trial Date:       January 4, 2016
23   RESOLUTIONS, INC.; PELICAN CREST II
     COMMUNITY ASSOCIATION; NEWPORT
24   COAST COMMUNITY ASSOCIATION; SIMA
     NOORAHANI; SEMAR VENTURES, LLC;
25   and DOES 1-100, inclusive,

26              Defendants.

27

28

_____
DECLARATION OF DAN DICKEY IN SUPPORT OF APPLICATION FOR ENTRY OF DEFAULT JUDGMENT

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CA  90071

### DECLARATION OF NATIONSTAR MORTGAGE LLC

I, _____Dan Dickey_____, do declare and state as follows:

1. I am a _Document Execution Specialist_ at Nationstar Mortgage LLC ("Nationstar"). Nationstar is the servicer for the Plaintiff in this matter, THORNBURG MORTGAGE SECURITIES TRUST 2007-3, MORTGAGE BACKED NOTES, SERIES 2007-3, U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF AMERICA NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE ("Plaintiff"). I make this Declaration in Support of Plaintiff's Application for Default Judgment. I make this declaration based on facts within my own personal knowledge obtained from my review of records regularly maintained by Nationstar in the ordinary course of its business. If called upon to testify to such facts, I could and would testify competently as to the facts stated herein. I am authorized to make this declaration for Nationstar.

2. I have reviewed Nationstar's servicing records related to the loan that Hooman Moshar obtained on or about May 25, 2006 (the "Loan"), to refinance property located at 21 Skyridge, Newport Coast, California (the "Property").

3. On or about May 25, 2006, Moshar made, executed, and delivered to Countrywide a Deed of Trust as security for repayment of the Note, which was recorded on May 31, 2006, in the Orange County Recorder's Office, Instrument No. 2006000365535 (the "Deed of Trust"). Mortgage Electronic Registration Systems, Inc. ("MERS") is the original beneficiary under said Deed of Trust. Id. The Deed of Trust evidencing Countrywide's security interest was recorded on May 31, 2006 in the Orange County Recorder's Office. A true and correct copy of the Note is attached hereto as Exhibit A and the Deed of Trust is attached hereto as Exhibit B.

4. On October 19, 2006, Newport Design Associates recorded a Deed of Trust against the property with respect to a $123,500 obligation incurred by Moshar. A true and correct copy of the Deed of Trust is attached hereto as Exhibit C.

5. On November 9, 2006, America's Wholesale Lender also recorded a Deed of Trust with respect to another $1,449,200 loan taken out by Moshar. A true and correct copy of this deed

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CA 90071

2
DECLARATION OF NATIONSTAR MORTGAGE LLC

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CA 90071

of trust is attached hereto as Exhibit D. The America's Wholesale Lender lien was subsequently assigned to Real Time Resolutions. A true and correct copy of the assignment is attached hereto as Exhibit E.

6.   On February 14, 2007, Moshar executed a grant deed that purported to transfer ownership of the property to Semar Ventures LLC ("Semar"). On the same day, Moshar recorded a Deed of Trust purporting to secure a loan in the amount of $7,125,000 to Semar.

7.   Moshar defaulted on the Loan by failing to make his October 1, 2008 payment. A true and correct copy of the payment history for the Loan is attached hereto as Exhibit F.

8.   On November 25, 2009, MERS recorded an assignment of the Deed of Trust to Plaintiff preparation for a foreclosure. A true and correct copy of the assignment is attached hereto as Exhibit G.

9.   On March 2, 2009, Pelican Crest II Community Association recorded a lien with respect to unpaid HOA dues. A true and correct copy of the lien is attached hereto as Exhibit H.

10.   On May 14, 2009, Newport Coast Community Association recorded a lien with respect to delinquent HOA dues. A true and correct copy of the lien is attached hereto as Exhibit I.

11.   On June 4, 2009, Sima Noorahani ("Noorahani") recorded a deed of trust purporting to secure a $300,000 loan to Semar, the property's new owner as of February 2007. A true and correct copy of the deed of trust is attached hereto as Exhibit J.

12.   By reason of Moshar's failure to make loan payments, Plaintiff elected to declare the whole sum of principal and interest immediately due and payable and filed the present lawsuit. The whole sum due consists of a principal balance of $5,708,783.86, plus interest accrued to October1, 2015 amounting to $1,804,213.34, plus unpaid late charges and other expenses of $919,050.74, totaling $8,432,047.94. Additionally, interest on the combined total amounts to $664.72 per day for each additional day from October 1, 2015, to the date of entry of judgment.

[CONTINUED ON NEXT PAGE]

1      I declare under penalty of perjury under the laws of the State of California that the foregoing

2  is true and correct. Executed this __13__ day of October, 2015 at _____Lewisville_____,

3  __Texas_____.



NATIONSTAR MORTGAGE LLC
Dan Dickey
Document Execution Specialist

PAS01\856291.1
084912\000418

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CA 90071

4
DECLARATION OF NATIONSTAR MORTGAGE LLC

EXHIBIT A

# EXHIBIT A

EXHIBIT A

(Page 2 of 53)

Prepared by: SHERI BRENNECKE

LOAN #: 136276102

# ADJUSTABLE RATE NOTE
## (MTA - Twelve Month Average Index - Payment Caps)

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THIS NOTE.**

MAY 25, 2006                         SAN DIEGO                         CALIFORNIA
[Date]                              [City]                            [State]

21 Skyridge, Newport Coast, CA 92657-1815
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 5,160,000.00    (this amount is called "Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided under the terms of this Note but will never exceed    115 percent of the Principal amount I originally borrowed. This is called the "Maximum Limit." Lender is COUNTRYWIDE HOME LOANS, INC.

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

(A) Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. Up until the first day of the calendar month that immediately precedes the first monthly payment due date set forth in Section 3 of this Note, I will pay interest at a yearly rate of    8.125 %.  Additional days interest collected prior to the first monthly payment due date is sometimes called "Per Diem" interest and is due at the time I close my loan. Thereafter until the first Interest Rate Change Date, defined below in Section 2(B), I will pay interest at a yearly rate of    2.250 %. This rate is sometimes referred to as the "Start Rate" and is used to calculate the initial monthly payment described in Section 3.  The interest rate required by this Section 2 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

(B) Interest Rate Change Dates

The interest rate I will pay may change on the first    day of JULY, 2006    , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

(C) Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates

● PayOption ARM Note - MTA Index
1E306-XX (12/05)(d)                         Page 1 of 5





610  136276102  N  001  001

(Page 3 of 53)

LOAN #: 136276102

(H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D)  Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding FOUR                                   percentage point(s)    4.000 ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest rate will never be greater than     9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

3.  **PAYMENTS**

**(A)  Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the first           day of each month beginning on JULY 01, 2006           . I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   JUNE 01, 2046           , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 10219, Van Nuys, CA 91410-0219 or at a different place if required by the Note Holder.

**(B)  Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $16,312.94           , unless adjusted under Section 3(F).

**(C)  Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the first           day of JULY, 2007           , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D)  Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than    7.500% of my prior monthly payment. This    7.500%  limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number    1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment.

**(E)  Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date

● PayOption ARM Note - MTA Index
1E306-XX (12/05)                                    Page 2 of 5

(Page 4 of 53)

LOAN #: 136276102

in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

**(F)  Limit on My Unpaid Principal; Increased Monthly Payment**
My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED FIFTEEN             percent
(     115 %) of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my Minimum Payment would cause me to exceed that limit, I will instead pay a new Minimum Payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G)  Required Full Payment**
On the tenth             Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H)  Payment Options**
After the first Interest Rate Change Date, the Note Holder may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." The Payment Options are calculated using the new interest rate in accordance with Section 2(D). I may be given the following Payment Options:
    (i)  Interest Only Payment:  the amount that would pay the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.
    (ii)  Amortized Payment:  the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.
    (iii)  15 Year Amortized Payment:  the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.
    These Payment Options are only applicable if they are greater than the Minimum Payment.

**4.    NOTICE OF CHANGES**
The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.    BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.
I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.    LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me

● PayOption ARM Note - MTA Index
1E308-XX (12/05)                    Page 3 of 5

LOAN #: 136276102

that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

    **(A)   Late Charges for Overdue Payments**

    If the Note Holder has not received the full amount of any Minimum Payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000 % of the Minimum Payment. I will pay this late charge promptly but only once on each late payment.

    **(B)   Default**

    If I do not pay the full amount of each Minimum Payment on the date it is due, I will be in default.

    **(C)   Notice of Default**

    If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the Minimum Payment by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

    **(D)   No Waiver By Note Holder**

    Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

    **(E)   Payment of Note Holder's Costs and Expenses**

    If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

**8.    GIVING OF NOTICES**

    Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

    Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

    If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

**10.   WAIVERS**

    I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.   SECURED NOTE**

    In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

    Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond

● PayOption ARM Note - MTA Index

1E306-XX (12/05)                          Page 4 of 5

(Page 6 of 53)

LOAN #: 136276102

for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

. WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____    - Borrower
HOOMAN  MOSHAR

_____    - Borrower

_____    - Borrower

_____    - Borrower

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS INC

BY_____
David A. Spector
Managing Director

● PayOption ARM Note - MTA Index
1E306-XX (12/05)                        Page 5 of 5

EXHIBIT B

# EXHIBIT B

EXHIBIT B

(Page 1 of 26)

RECORDING REQUESTED BY:
Ticor Title- San Diego Branch

**This Document was electronically recorded by
California Hall Service A**

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

Recording Requested By:
M. PHILIPS

81.00
2006000365535 03:30pm 05/31/06
103 200 D11 26
0.00 0.00 0.00 0.00 75.00 0.00 0.00 0.00

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

009015578    MOSHAR    H

610  136276102  D2  001  001

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
SHERI BRENNECKE
2232097  JC

[Space Above This Line For Recording Data]

2232097                    0001362761020500 6
[Escrow/Closing #]              [Doc ID #]

# DEED OF TRUST
MIN 1001337-0001416728-5

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3,
11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in
Section 16.

(A) "Security Instrument" means this document, which is dated   MAY 25, 2006              , together
with all Riders to this document.
(B) "Borrower" is
HOOMAN MOSHAR, A MARRIED MAN AS HIS SOLE & SEPARATE PROPERTY

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Page 1 of 16
(VMP) -6A(CA) (0207)    CHL (08/05)(d)    VMP Mortgage Solutions, Inc. (800)521-7291                    Form 3005  1/01
CONV/VA

* 2 3 9 9 1 *                    * 1 3 6 2 7 6 1 0 2 0 0 0 0 0 1 0 0 6 A *

Exhibit B - Page 67

(Page 2 of 26)

DOC ID #: 0001362761020506

Borrower's address is
21 Skyridge, Newport Coast, CA 92657-1815
Borrower is the trustor under this Security Instrument.
(C) "Lender" is
COUNTRYWIDE HOME LOANS, INC.
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613
(D) "Trustee" is
RECONTRUST COMPANY, N.A.
225 W HILLCREST DRIVE, MSN: TO-02, THOUSAND OAKS, CA 91360
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this
Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated MAY 25, 2006        . The
Note states that Borrower owes Lender
FIVE MILLION ONE HUNDRED SIXTY THOUSAND and 00/100

Dollars (U.S. $ 5,160,000.00        ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than    JUNE 01, 2046
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [X] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |
| | | PUD |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners association
or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage
to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

Exhibit B - Page 68

(Page 3 of 26)

DOC ID #: 00013627610205006

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY          of          ORANGE          :
[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]
LOT (S) 12 OF TRACT 15604, IN THE CITY OF NEWPORT BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 773 PAGE(S) 1 TO 9 INCLUSIVE, OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA, AND AS AMENDED BY CERTIFICATE OF CORRECTION RECORDED JUNE 26, 2001 AS INSTRUMENT NO. 01-422896, OFFICIAL RECORDS.

Parcel ID Number: 47314212          which currently has the address of
21 Skyridge, Newport Beach
[Street/City]
California 92657-1815 ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

-6A(CA) (0207)          CHL (08/05)          Page 3 of 16          Form 3005 1/01

(Page 4 of 26)

DOC ID #: 0001362761020S006

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

VMP -6A(CA) (0207)          CHL (08/05)                    Page 4 of 16                              Form 3005  1/01

(Page 5 of 26)

DOC ID #: 00013627610205006

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

VMP -6A(CA) (0207)          CHL (08/05)          Page 5 of 16          Form 3005 1/01

Exhibit B - Page 71

(Page 6 of 26)

DOC ID #: 0001362761020 5006

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

(Page 7 of 26)

DOC ID #: 0001362761020 5006

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise
required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard
mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further
agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the
outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may
make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in
writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be
applied to restoration or repair of the Property, if the restoration or repair is economically feasible and
Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold
such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has
been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender
may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments
as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be
paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on
such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of
the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not
economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the
sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.
Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim
and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance
carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will
begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or
otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount
not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's
rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies
covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use
the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this
Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence
within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as
Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise
agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist
which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not
destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property.
Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent
the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to
Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if
damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in
connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or
restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds
for the repairs and restoration in a single payment or in a series of progress payments as the work is
completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property,
Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

(Page 8 of 26)

DOC ID #: 0001362761020506

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

DOC ID #: 0001362761020500 6

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

VMP®-6A(CA) (0207)        CHL (08/05)            Page 9 of 16                        Form 3005 1/01

DOC ID #: 0001362761020506

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

(Page 11 of 26)

DOC ID #: 00013627610205006

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

(Page 12 of 26)

DOC ID #: 0001362761020506

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

(Page 13 of 26)

DOC ID #: 0001362761020500 6

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

VMP ®-6A(CA) (0207)          CHL (08/05)          Page 13 of 16          Form 3005 1/01

DOC ID #: 00013627610205006

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

(Page 15 of 26)

DOC ID #: 00013627610205006

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
HOOMAN MOSHAR                                                              -Borrower

_____ (Seal)
                                                                                           -Borrower

_____ (Seal)
                                                                                           -Borrower

_____ (Seal)
                                                                                           -Borrower

VMP-6A(CA) (0207)          CHL (08/05)          Page 15 of 16          Form 3005  1/01

(Page 16 of 26)

DOC ID #: 00013627610205006

State of California
County of *San Diego*

On *5/25/06* _____ before me, *Ashley Kay Stewart, Notary Public* _____
personally appeared

*Hooman Mishmir* _____

_____

_____

_____

_____

_____, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)





(Page 17 of 26)

# PLANNED UNIT DEVELOPMENT RIDER

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423


Prepared By:
SHERI BRENNECKE


2232097                    00013627610205006
[Escrow/Closing #]              [Doc ID #]


    THIS PLANNED UNIT DEVELOPMENT RIDER is made this TWENTY-FIFTH    day of
MAY, 2006       , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the

MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®-7R (0411)      CHL (11/04)(d)       Page 1 of 4          Initials: _____
                     VMP Mortgage Solutions, Inc. (800)521-7291        Form 3150 1/01

* 2 3 9 9 1 *                    * 1 3 6 2 7 6 1 0 2 0 0 0 0 0 0 1 0 0 7 R *

(Page 18 of 26)

DOC ID #: 0001362761020500 6

undersigned (the "Borrower") to secure Borrower's Note to
COUNTRYWIDE HOME LOANS, INC.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

21 Skyridge
Newport Coast, CA 92657-1815
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in
THE COVENANTS, CONDITIONS, AND RESTRICTIONS FILED OF RECORD
THAT AFFECT THE PROPERTY

(the "Declaration"). The Property is a part of a planned unit development known as
PELICAN CREST COMMUNITY ASSOC

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

Initials: (HM)

VMP®-7R (0411)    CHL (11/04)    Page 2 of 4    Form 3150 1/01

(Page 19 of 26)

DOC ID #: 00013627610205006

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials: _____

-7R (0411)    CHL (11/04)    Page 3 of 4    Form 3150  1/01

(Page 20 of 26)

DOC ID #: 00013627610205006

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____(Seal)
HOOMAN MOSHAR                                                                          - Borrower

_____(Seal)
                                                                                                      - Borrower

_____(Seal)
                                                                                                      - Borrower

_____(Seal)
                                                                                                      - Borrower

VMP®-7R (0411)          CHL (11/04)              Page 4 of 4                       Form 3150  1/01

(Page 21 of 26)

# ADJUSTABLE RATE RIDER
### (PayOption MTA Twelve Month Average Index - Payment Caps)

2232097                    00013627610205006
[Escrow/Closing #]            [Doc ID #]

THIS ADJUSTABLE RATE RIDER is made this TWENTY-FIFTH        day of
MAY, 2006            , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
COUNTRYWIDE HOME LOANS, INC.

("Lender") of the same date and covering the property described in the Security Instrument and
located at:
                    21 Skyridge
            Newport Coast, CA 92657-1815
                    [Property Address]

THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE
MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY
PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD
BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE
MAXIMUM LIMIT STATED IN THE NOTE.

ADDITIONAL COVENANTS: In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for changes in the interest rate and the monthly payments, as follows:

● PayOption MTA ARM Rider
1E310-XX (09/05)(d)              Page 1 of 6





* 23991 *            * 1 3 6 2 7 8 1 0 2 0 0 0 0 0 1 E 3 1 0 *

(Page 22 of 26)

DOC ID #: 0001362761020

## 2. INTEREST
### (A) Interest Rate
Interest will be charged on unpaid Principal until the full amount of Principal has been paid. Up until the first day of the calendar month that immediately precedes the first monthly payment due date set forth in Section 3 of the Note, I will pay interest at a yearly rate of    8.125 %. Additional days interest collected prior to the first monthly payment due date is sometimes called "Per Diem" interest and is due at the time I close my loan. Thereafter until the first Interest Rate Change Date, defined below in Section 2(B), I will pay interest at a yearly rate of    2.250 %. This rate is sometimes referred to as the "Start Rate" and is used to calculate the initial monthly payment described in Section 3. The interest rate required by this Section 2 of the Note is the rate I will pay both before and after any default described in Section 7(B) of the Note.

### (B) Interest Rate Change Dates
The interest rate I will pay may change on the first    day of JULY, 2006    , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

### (C) Index
Beginning with the first Interst Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".
If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (D) Calculation of Interest Rate Changes
Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding    FOUR percentage point(s) (    4.000 %) ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than    9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

## 3. PAYMENTS
### (A) Time and Place of Payments
I will make a payment every month.

• PayOption MTA ARM Rider
1E310-XX (09/05)                    Page 2 of 6

(Page 23 of 26)

DOC ID #: 0001362761020506

I will make my monthly payments on the FIRST                day of each month beginning on July, 2006              . I will make these payments every month until I have paid all the Principal and Interest and any other charges described below that I may owe under the Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  JUNE 01, 2046              , I still owe amounts under the Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**
Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $ 16,312.94                , unless adjusted under Section 3 (F).

**(C) Payment Change Dates**
My monthly payment may change as required by Section 3(D) below beginning on the first           day of JULY, 2007            , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**
At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than   7.500% of my prior monthly payment. This   7.500% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number   1.075 . The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment.

• PayOption MTA ARM Rider
1E310-XX (09/05)                    Page 3 of 6

(Page 24 of 26)

DOC ID #: 00013627610205006

**(E) Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED FIFTEEN percent ( 115 %) of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my Minimum Payment would cause me to exceed that limit, I will instead pay a new Minimum Payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G) Required Full Payment**

On the tenth            Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H) Payment Options**

After the first Interest Rate Change Date, the Note Holder may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." The Payment Options are calculated using the new interest rate in accordance with Section 2(D). I may be given the following Payment Options:

(i) **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) **Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

• PayOption MTA ARM Rider
1E310-XX (09/05)                    Page 4 of 6

(Page 25 of 26)

DOC ID #: 00013627610205006

(iii) **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by

•PayOption MTA ARM Rider
1E310-XX (09/05)                    Page 5 of 6

(Page 26 of 26)

DOC ID #: 00013627610205006

this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____

HOOMAN MOSHAR                                                                   -Borrower

_____
                                                                                -Borrower

_____
                                                                                -Borrower

_____
                                                                                -Borrower

• PayOption MTA ARM Rider
1E310-XX (09/05)                              Page 6 of 6

EXHIBIT C

# EXHIBIT C

EXHIBIT C

RECORDING REQUESTED BY:

AND WHEN RECORDED MAIL TO:

NEWPORT DESIGN
23 CATANIA
NEWPORT COAST, CA 92657

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

15.00

2006000706562 10:30am 10/19/06

118 96 D11 A36 2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

Space Above This Line for Recorder's Use Only

A.P.N.: 473-142-12

# SHORT FORM DEED OF TRUST AND ASSIGNMENT OF RENTS

THIS DEED OF TRUST, made this Fourth day of October, 2006, between

TRUSTOR: HOOMAN MOSHAR, a Married Man as his Sole and Separate Property

whose address is 21 SKYRIDGE, NEWPORT BEACH, CA 92657, and

TRUSTEE: Fidelity National Title Company, Inc., a California Corporation, and

BENEFICIARY: Newport Design Associates, Inc., a California Corporation

Witnesseth: That Trustor IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS to TRUSTEE IN TRUST, WITH POWER OF SALE, that property in the City of NEWPORT BEACH, ORANGE County, State of California, described as:

Lot 12 of Tract 15604, in the City of Newport Beach, County of Orange, State of California, as shown on a map recorded in Book 773, Page(s) 1 to 9 inclusive, of Miscellaneous Maps, records or Orange County California, and as amended by certificate of correction recorded June 26, 2001 as Instrument No. 01-422896, official records.

This Deed of Trust is given and accepted upon the express provision that should the property hereinbefore described, or any part hereof, be conveyed or alienated by Trustor, either voluntarily or by operation of law, without Beneficiary's written consent, then all sums secured hereby shall, at Beneficiary's option, become immediately due and payable.

TOGETHER WITH the rents, issues, and profits thereof, SUBJECT, HOWEVER, to the right, power and authority given to and conferred upon Beneficiary by paragraph 10 of the provisions incorporated by reference to collect and apply such rents, issues and profits.
FOR THE PURPOSE OF SECURING: 1.Performance of each agreement of Trustor incorporated by reference or contained herein. 2.Payment of the indebtedness evidenced by one promissory note of even date herewith, and any extension or renewal thereof, in the principal sum of $123,500.00 executed by Trustor in favor of Beneficiary or order. 3.Payment of such further sums as the then record owner of said property hereafter may borrow from Beneficiary, when evidenced by another note (or notes) reciting it is so secured.
TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES: By the execution and delivery of this Deed of Trust and the note secured hereby, that provisions (1) to (14), inclusive, of the fictitious deed of trust recorded in Santa Barbara County and Sonoma County on October 18, 1961, and in all other counties on October 23, 1961, in the book and at the page of Official Records in the office of the county recorder of the county where said property is located, noted below and opposite the name of such county, viz:



A.P.No: 473-142-12

| County | Book | Page | County | Book | Page | County | Book | Page | County | Book | Page | County | Book | Page |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alameda | 435 | 684 | Imperial | 1091 | 501 | Merced | 1547 | 538 | San Benito | 271 | 383 | Siskiyou | 468 | 181 |
| Alpine | 1 | 250 | Inyo | 147 | 598 | Modoc | 184 | 851 | San Bernardino | 5567 | 61 | Solano | 1105 | 182 |
| Amador | 104 | 348 | Kern | 3427 | 60 | Mono | 52 | 429 | San Francisco | A332 | 905 | Sonoma | 1851 | 689 |
| Butte | 1145 | 1 | Kings | 792 | 833 | Monterey | 2194 | 538 | San Joaquin | 2470 | 311 | Stanislaus | 1715 | 456 |
| Calaveras | 145 | 152 | Lake | 362 | 39 | Napa | 639 | 86 | San Luis Obispo | 1151 | 12 | Sutter | 572 | 297 |
| Colusa | 296 | 617 | Lassen | 171 | 471 | Nevada | 305 | 320 | San Mateo | 4078 | 420 | Tehama | 401 | 289 |
| Contra Costa | 3978 | 47 | Los Angeles | T2055 | 899 | Orange | 5889 | 611 | Santa Barbara | 1878 | 860 | Trinity | 93 | 366 |
| Del Norte | 78 | 414 | Madera | 810 | 170 | Placer | 895 | 301 | Santa Clara | 5336 | 01 | Tulare | 2294 | 275 |
| El Dorado | 568 | 456 | Marin | 1508 | 339 | Plumas | 151 | 5 | Santa Cruz | 1431 | 494 | Tuolumne | 135 | 47 |
| Fresno | 4626572 | | Mariposa | 77 | 292 | Riverside | 3005 | 523 | Shasta | 684 | 528 | Ventura | 2062 | 386 |
| Glenn | 422 | 184 | Mendocino | 579 | 530 | Sacramento | 4331 | 62 | Sierra | 29 | 335 | Yolo | 653 | 245 |
| Humboldt | 657 | 527 | | | | San Diego Series 2 Book 1961, Page 183887 | | | | | | Yuba | 334 | 486 |

(which provisions, identical in all counties, are printed on page 3 of this document) hereby are adopted and incorporated herein and made a part hereof as fully as though set forth herein at length; that he will observe and perform said provisions; and that the references to property, obligations, and parties in said provisions shall be construed to refer to the property, obligations, and parties set forth in this Deed of Trust.

In accordance with Section 2924b, Civil Code, request is hereby made that a copy of any Notice of Default and a copy of any Notice of Sale be mailed to Trustor at Trustor's address hereinbefore set forth, or if none shown, to Trustor at the property address.

NOTICE: A COPY OF ANY NOTICE OF DEFAULT AND OF ANY NOTICE OF SALE WILL BE SENT ONLY TO THE ADDRESS CONTAINED IN THIS RECORDED REQUEST. IF YOUR ADDRESS CHANGES, A NEW REQUEST MUST BE RECORDED.

*Signature of Trustor(s)*

HOOMAN MOSHAR

Document Date:  October 4, 2006

STATE OF CALIFORNIA       )SS
COUNTY OF  Orange        )
On  10/04/06  before me, Kimberly Chan, notary public
personally appeared Hooman Moshar
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature

KIMBERLY CHAN
COMM. # 1385463
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Comm. Exp. Nov. 18, 2006

Exhibit B - Page 95

EXHIBIT D

# EXHIBIT D

EXHIBIT D

RECORDING REQUESTED B...
Ticor Title- San Diego Branch

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

|||||||||||||||||||||||||||||||||||||||||| 57.00
2006000756949 10:36am 11/09/06
108 73 D11 A38 16
0.00 0.00 0.00 0.00 46.00 0.00 0.00 0.00

Recording Requested By:
J. FOX


After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

NV19
D60

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
JOHNNA HOBOX

2232733 -JC

[Space Above This Line For Recording Data]

060707JM                              0001424292321 1006
[Escrow/Closing #]                    [Doc. ID #]

## DEED OF TRUST AND ASSIGNMENT OF RENTS

MIN1001337-0001797841-5

This Deed of Trust secures an obligation which calls for payment of interest at a variable interest rate.
THIS DEED OF TRUST is made this 2nd      day of NOVEMBER, 2006    , between
HOOMAN MOSHAR, A MARRIED MAN AS HIS SOLE & SEPARATE PROPERTY

whose address is,
21 SKYRIDGE, NEWPORT COAST, CA 92657-1815
herein called "Trustor,"
ReconTrust Company, N.A
225 West Hillcrest Dr., MSN TO-02, Thousand Oaks, CA 91360
herein called "Trustee," and  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS").
a Delaware corporation with an address of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
MERS is the "Beneficiary" under this Deed of Trust and is acting solely as a nominee for
AMERICA'S WHOLESALE LENDER

("Lender" or "you") and its successors and assigns, with an address of.
4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613
Trustor irrevocably grants, transfers and assigns to Trustee, in trust and with power of sale, all of the real
property in the City or Town of NEWPORT COAST                       , County of
ORANGE                              , State of California, having the street address of
21 SKYRIDGE, NEWPORT COAST, CA 92657-1815



● MERS HELOC - CA Deed of Trust
10988-CA (10/06)(d/i)                          Page 1 of 10

* 2 3 9 9 1 *              * 1 4 2 4 2 9 2 3 2 0 0 0 0 1 D 9 8 8 *




---

Exhibit B - Page 97



DOC ID #: 00014242923211006

and more specifically described as:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 47314212                                together with all improvements
now or hereafter erected on the property, and all easements, rights, appurtenances, rents (subject however to
the rights and authorities given herein to Lender to collect and apply such rents), royalties, mineral, oil and
gas rights and profits, water, water rights, and water stock, and all fixtures now or hereafter attached to the
property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part
of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the
leasehold estate if this Deed of Trust is on a leasehold) are herein referred to as the "Property."

    TRUSTOR UNDERSTANDS and agrees that MERS is a separate corporation acting solely as nominee
for Lender and Lender's successors and assigns, and holds only legal title to the interests granted by Trustor
in this Deed of Trust, but, if necessary to comply with law or custom, MERS (as nominee for Lender and
Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not
limited to, the right to foreclose and sell the Property, and to take any action required of Lender including,
but not limited to, releasing or canceling this Deed of Trust.

I.    THIS DEED OF TRUST SECURES:

    a.    All of the obligations of Trustor in favor of Lender or order under the terms of a revolving
credit agreement dated NOVEMBER 2, 2006        , herein called Agreement. The Agreement
provides, among other things, for the payment of all sums advanced by Lender from time to time
pursuant to the Agreement and for the payment of interest. The maximum principal obligation
under the Agreement to be secured by this Deed of Trust at any one time is
ONE MILLION FOUR HUNDRED FORTY NINE THOUSAND TWO HUNDRED and 00/100
Dollars ($ 1,449,200.00     ) unless Lender, with Trustor's written consent, hereafter
increases this amount. Advances made by Lender to protect the security of this Deed of Trust or to
preserve the Property shall not be subject to the limitation of the preceding sentence.

    The security of this Deed of Trust shall not be affected by the extension, renewal or modification
from time to time of the obligations, instruments or agreements described above.

    b.    Payment of any and all obligations and liabilities, whatsoever, whether primary, secondary,
direct, indirect, fixed or contingent, whether now or hereafter due from Trustor (or any successor in
interest to Trustor) whether created directly or acquired by assignment if the document evidencing
such obligation or liability or any other writing signed by Trustor (or any successor in interest to
Trustor) specifically provides that said obligation or liability is secured by this Deed of Trust.

● MERS HELOC - CA Deed of Trust
1D988-CA (10/06)                        Page 2 of 10



DOC ID #: 00014242923211006

c.   Performance of each agreement of Trustor herein contained or contained in any other agreement, instrument or other writing to which Trustor is a party if the same is written in connection with any of the foregoing.

d.   Payment of all sums to be expended by the Lender or Trustee pursuant to the terms hereof.

2.   TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES:

a.   To keep the Property in good condition and repair; not to remove or demolish any building or improvement thereon; to complete or cause to be completed any construction of buildings or other improvements thereon which are financed in whole or in part by the indebtedness secured hereby and to restore promptly and in good and workmanlike manner any building or other improvement which may be damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting the Property or requiring any alteration or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said Property in violation of law; to cultivate, irrigate, weed, fertilize, fumigate, spray, prune and do all other acts which from the character or use of the Property may be reasonably necessary, the specific enumerations herein not excluding the general.

b.   To provide, maintain and deliver to Lender fire and other insurance on the Property satisfactory to and with loss payable to Lender. The amount collected under any fire or other insurance policy may be applied by Lender upon indebtedness secured hereby and in such order as Lender may determine, or at option of Lender, the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default hereunder or invalidate any act done pursuant to such notice.

c.   To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Lender or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Lender or Trustee may appear, and in any suit brought by Lender to foreclose this Deed of Trust. It is agreed that the Lender shall be subrogated to the claims and liens of all parties whose claims or liens are discharged or paid with the proceeds of the Agreement secured hereby.

d.   To pay at least ten days before delinquency all taxes and assessments affecting the Property, including, without limitation, assessment on appurtenant water stock, all encumbrances, charges and liens on the Property or any part thereof, and all costs, fees and expenses of this trust.

e.   That should Trustor fail to make any payment or do any act as herein provided, then Lender or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may:

    (1)   Make or do the same in such manner and to such extent as either may deem necessary or appropriate to protect the security hereof, Lender or Trustee being authorized to enter upon the Property for such purposes.

    (2)   Appear in and defend any action or proceeding purporting to affect the security hereof or the rights or power of Lender or Trustee.

● MERS HELOC - CA Deed of Trust
1D888-CA (10/06)                           Page 3 of 10



DOC ID #: 00014242923211006

(3)  Pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior and superior hereto.

(4)  In exercising any such powers, pay necessary expenses, employ counsel and pay his or her reasonable fees.

f.  To pay immediately and without demand all sums so expended by Lender or Trustee, with interest from date of expenditure at the maximum rate allowed by law in effect at the date hereof or at the option of Lender, such sums may be added to the principal balance of any indebtedness secured hereby and shall bear the highest rate of interest as any such indebtedness.

g.  To pay for any statement provided for by the law in effect on the date hereof regarding the obligation secured hereby in the amount demanded by the Lender but not to exceed the maximum allowed by law at the time the statement is demanded.

3.  IT IS FURTHER AGREED THAT:

a.  Any award of damages in connection with any condemnation for public use of or injury to the Property or any part thereof is hereby assigned and shall be paid to Lender who may apply or release such monies received by it in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

b.  By accepting payment of any sum secured hereby after its due date, or after the filing of notice of default and of election to sell, Lender shall not waive its right to require prompt payment when due of all other sums so secured, or to declare default for failure so to pay, or to proceed with the sale under any such notice of default and of election to sell, for any unpaid balance of said indebtedness. If Lender holds any additional security for any obligation secured hereby, it may enforce the sale thereof at its option, either before, contemporaneously with, or after the sale is made hereunder, and on any default of Trustor, Lender may, at its option, offset against any indebtedness owing by it to Trustor, the whole or any part of the indebtedness secured hereby.

c.  Without affecting the liability of any person, including, without limitation, Trustor, for the payment of any indebtedness secured hereby, or the lien of this Deed of Trust on the remainder of the Property for the full amount of any indebtedness unpaid, Lender and Trustee are respectively empowered as follows:

(1)  Lender may from time to time and without notice (a) release any person liable for the payment of any of the indebtedness, (b) extend the time or otherwise alter the terms of payment of any of the indebtedness, (c) accept additional security therefor of any kind, including Deeds of Trust or mortgages, (d) alter, substitute or release any of the Property securing the indebtedness.

(2)  Trustee may, at any time, and from time to time, upon the written request of Lender (a) consent to the making of any map or plat of the Property, (b) join in granting any easement or creating any restriction thereon, (c) join in any subordination or other agreement affecting this Deed of Trust or the lien or charge thereof or, (d) reconvey, without any warranty, all or any part of the Property.

◆ MERS HELOC - CA Deed of Trust
1D980-CA (10/08)                    Page 4 of 10



DOC ID #: 00014242923211006

d.    Upon (a) written request of Lender or (b) performance of all obligations of the Trustor hereunder and under each and every note, guarantee, Agreement or other writing evidencing the indebtedness secured hereby, and upon surrender of this Deed of Trust to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the Property then held hereunder. The recital in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." Five years after issuance of such reconveyance, Trustee may destroy said note, guarantee, Agreement or other evidence of indebtedness and this Deed of Trust (unless directed in such request to retain them).

e.    Trustor hereby gives to and confers upon Lender the right, power and authority during the continuance of these trusts to collect the rents, issues and profits of the Property and of any personal property located thereon, and hereby absolutely and unconditionally assigns all such rents, issues and profits to Lender; provided, however, that Lender hereby consents to the collection and retention of such rents, issues and profits as they accrue and become payable only if Trustor is not, at such time, in default with respect to payment of any indebtedness secured hereby or in the performance of any agreement hereunder. Upon any such default, Lender may at any time, without notice, either in person, by agent, or by a receiver to be appointed by a court, without regard to the adequacy of any security for the indebtedness hereby secured and without limiting the generality of Section 2.e.(1), above, enter upon and take possession of the Property or any part thereof, and in its own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Lender may determine; also perform such acts of repair, nurturing, cultivation, irrigation, weeding, fertilizing, fumigation, spraying, pruning or protection, as may be necessary or proper to conserve the value of the Property or any trees, planting or crops growing thereon; also lease the same or any part thereof for such rental, term, and upon such conditions as its judgment may dictate; also prepare for harvest, sever, remove, and sell any crops that may be growing upon the premises, and apply the net proceeds thereof to the indebtedness secured hereby. The entering upon and taking possession of the Property and performance or failure to collect such rents, issues and profits, and the application thereof as aforesaid, shall not waive or cure any default or notice of default hereunder, or invalidate any act done pursuant to such notice and not constitute or otherwise result in any assumption by or liability of Lender for maintenance, depreciation, misuse or risk of loss other than for damage or loss to the Property due to Lender's gross negligence or intentional torts. Trustor also assigns to Trustee, as further security for the performance of the obligations secured hereby, all prepaid rents and all monies which may have been or may hereafter be deposited with said Trustor by any lessee of the premises herein described, to secure the payment of any rent, and upon default in the performance of any of the provisions hereof, Trustor agrees to deliver such rents and deposits to the Trustee.

f.    Upon default by Trustor in the performance of any payment or other obligation secured hereby or in the performance of any agreement hereunder, or if, whether voluntarily or involuntarily, there is a sale or transfer of all or any part of (i) the Property or an interest therein, or (ii) a beneficial interest in Trustor and Trustor is not a natural person, or if Trustor ceases to use the Property as Trustor's primary residence, Lender may declare all sums secured hereby immediately due without notice or demand and no waiver of this right shall be effective unless in writing and signed by Lender.

● MERS HELOC - CA Deed of Trust
1D988-CA (10/06)                                Page 5 of 10



DOC ID #: 00014242923211006

g.    Waiver of a right granted to Lender hereunder as to one transaction or occurrence shall not be deemed to be a waiver of the right as to any subsequent transaction or occurrence. Lender may rescind any notice before Trustee's sale by executing a notice of rescission and recording the same. The recordation of such notice shall constitute also a cancellation of any prior declaration of default and demand for sale, and of any acceleration of maturity of indebtedness affected by any prior declaration or notice of default. The exercise by Lender of the right of rescission shall not constitute a waiver of any default then existing or subsequently occurring, nor impair the right of the Lender to execute other declarations of default and demand for sale, or notices of default and of election to cause the Property to be sold, nor otherwise affect the note or deed of trust, or any of the rights, obligations or remedies of the Lender or Trustee hereunder.

h.    At least three months or any lesser period required by law having elapsed between the recordation of the notice of default and the date of sale, Trustee, having first given notice of sale as then required by law, shall sell the Property at the time and place of sale fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as the Trustee may determine, at public auction to the highest bidder for cash, in lawful money of the United States of America, payable at the time of sale except as otherwise permitted by law. Trustee may postpone sale of all or any portion of the Property by public announcement at the time of sale, and from time to time thereafter may postpone the sale by public announcement, all as permitted by law. Trustee shall deliver to the purchaser its deed conveying the Property so sold, but without any covenant or warranty, expressed or implied. The recital in any such deed of any matters or facts, stated either specifically or in general terms, or as conclusions of law or fact, shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Lender, may purchase at the sale. After deducting all costs, fees and expenses of Trustee and of this trust, including costs of evidence of title in connection with the sale, the Trustee shall apply the proceeds of this sale to the payment of all sums then secured hereby, in such order and manner as may be required by the Lender; the remainder, if any, to be paid to the person or persons legally entitled thereto. If Lender shall elect to bring suit to foreclose this Deed of Trust in the manner and subject to the provisions, rights and remedies relating to the foreclosure of a mortgage, Lender shall be entitled to reasonable attorney's fees and litigation costs.

i.    Lender, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Lender and duly acknowledged and recorded in the office of the recorder of the county or counties where said Property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Lender hereunder, the book and page where this Deed of Trust is recorded and the name and address of the new trustee.

j.    This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Lender shall mean the owner and holder, including, without limitation, pledgees, of the note, guarantee, Agreement, or other evidence of indebtedness secured hereby, whether or not named as Lender herein. In this Deed of Trust, whenever the context so requires, the singular number includes the plural.

● MERS HELOC - CA Deed of Trust
1D988-CA (10/08)                           Page 6 of 10

Exhibit B - Page 102



DOC ID #: 00014242923211006

k.    Trustee accepts this trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Lender or Trustee shall be a party unless brought by Trustee.

l.    If Trustor or any successor in interest to Trustor sells, transfers or encumbers any interest in the Property, whether voluntarily or involuntarily, or if a beneficial interest in Trustor is sold or transferred, voluntarily or involuntarily, and Trustor is not a natural person: (a) the transferor and the transferee shall each immediately give written notice of said transfer to the Lender, at its address designated on the first page of this Deed of Trust; (b) if this Deed of Trust secures Trustor's obligation under an Agreement as defined herein, all credit extended by Lender under the Agreement, whether before or after the Property is transferred, shall be secured under this Deed of Trust as if no transfer had occurred except for credit extended by Lender more than five days after it has received the written notices required by this paragraph.

m.    The pleading of any statute of limitations as a defense to any and all obligations secured by this Deed of Trust is hereby waived to the full extent permitted by law.

4.    WITH REGARD TO ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES, TRUSTOR AGREES:
a.    As used in this Paragraph 4:

(1)    "Environmental Law" means all federal, state and local law concerning the public health, safety or welfare, environment or a Hazardous Substance, including without limitation, the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Sec. 9601 et seq., Resource Conservation and Recovery Act, 42 U.S.C. Sec. 6901 et seq., Toxic Substances Control Act, 15 U.S.C. Sec. 2601 et seq., Hazardous Materials Transportation Act, 49 U.S.C. Sec. 1801 et seq., Clean Water Act and Water Quality Act of 1987, 33 U.S.C. Sec. 1251 et seq., Safe Drinking Water Act, 41 U.S.C. Sec. 300f et seq., Clean Air Act, 42 U.S.C. Sec. 7901 et seq., Carpenter-Presley-Tanner Hazardous Account Act, Cal.Health & Safety Code Sec. 25300 et seq., Hazardous Waste Control Law, Cal.Health & Safety Code Sec. 25100 et seq., Porter-Cologne Water Quality Control Act, Cal.Water Code Sec. 1300 et seq., Hazardous Waste Disposal Land Use Law, Cal.Health & Safety Code Sec. 25220 et seq., Safe Drinking Water and Toxic Enforcement Act of 1986, Cal.Health & Safety Code Sec. 25249.5 et seq., Hazardous Substances Underground Storage Tank Law, Cal.Health & Safety Code Sec. 25280 et seq., Air Resources Law, Cal.Health & Safety Code Sec. 3900 et seq., Hazardous Materials Release Response Plans and Inventory, Cal.Health & Safety Code Sec. 25500 et seq., and Toxic Pits Cleanup Act of 1984, Cal.Health & Safety Code Sec. 25208 et seq.

(2)    "Hazardous Substance" means any substance which has characteristics of ignitability, corrosivity, toxicity, reactivity or radioactivity or other characteristics which render it dangerous or potentially dangerous to public health, safety or welfare or the environment, including without limitation, (i) petroleum or any fraction or other byproduct thereof, (ii) asbestos, (iii) lead, (iv) cyanide, (v) polychlorinated biphenyls, (vi) urea formaldehyde and (vii) anything defined as a "hazardous material," "toxic substance," "hazardous substance," "hazardous waste" or "waste" under any Environmental Law, including without limitation, "hazardous substance" as defined in Cal.Health & Safety Code Sec. 25316 and "waste" and "hazardous substance" as defined in Cal.Water Code Sec. 13050(d) and Sec. 13050(p)(l), respectively. The term is intended by Trustor and Lender to be interpreted in its most comprehensive and cumulative sense.

● MERS HELOC - CA Deed of Trust
1D988-CA (10/06)                            Page 7 of 10

Exhibit B - Page 103

DOC ID #: 00014242923211006

b.   Trustor represents and warrants that except as disclosed to and acknowledged in writing by Lender before the date of this Deed of Trust:

(1)   No Hazardous Substance has been located, used, manufactured, generated, treated, handled, stored, spilled, disposed of, discharged or released by any person on, under or about the Property.

(2)   Trustor has no knowledge of or reason to believe that there is any pending or threatened investigation, assessment, claim, demand, action or proceeding of any kind relating to (i) any alleged or actual Hazardous Substance located under or about the Property or (ii) alleged or actual violation or noncompliance by Trustor or any tenant of Trustor with regard to any Environmental Law involving the Property.

(3)   Neither Trustor nor any tenant of Trustor is required by any Environmental Law to obtain or maintain any permit, license, financial responsibility certificate or other approval as a condition to its business operations or in connection with its use, development or maintenance of the Property.

c.   Trustor represents and warrants that Trustor and every tenant of Trustor have been, are and will remain in full compliance with any Environmental Law applicable to its business operations and its use, development or maintenance of the Property.

d.   Trustor agrees to permit, or cause any tenant of Trustor to permit, Lender to enter and inspect the Property at any reasonable time for purposes of determining, as Lender deems necessary or desirable: (i) the existence, location and nature of any Hazardous Substance on, under or about the Property, (ii) the existence, location, nature, magnitude and spread of any Hazardous Substance that has been spilled, disposed of, discharged or released on, under or about the Property or (iii) whether or not Trustor and any tenant of Trustor are in compliance with applicable Environmental Law. If Trustor or its tenant fails to comply fully with the terms hereof, Lender may obtain affirmative injunctive relief therefor.

e.   Trustor agrees to indemnify and hold Lender and its successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including, without limitation, all costs of litigation and attorneys' fees, which Lender and its successors and assigns may directly or indirectly sustain or suffer as a consequence of any inaccuracy or breach of any representation, warranty or promise made in this Deed of Trust in connection with any Hazardous Substance or Environmental Law. Notwithstanding any of the language in this Deed of Trust to the contrary, this indemnity covers claims asserted after all the indebtedness secured by this Deed of Trust has been paid and discharged, whether or not this Deed of Trust has also been reconveyed to Trustor. The only exclusions hereto may relate to claims arising out of the affirmative acts of Lender or of a third party after Trustor's interest in the Property has terminated.

● MERS HELOC - CA Deed of Trust
1D980-CA (10/06)                         Page 8 of 10



DOC ID #: 00014242923211006

f.    The provisions of this Paragraph 4 shall not be affected by the acquisition by Lender or its successors or assigns of any ownership or other interest in the Property beyond Lender's security interest in the Property created under this Deed of Trust, whether or not such acquisition is pursuant to the foreclosure of this Deed of Trust or a merger of the interest of the Lender or its successors and assigns in the Property.

5.    ADDITIONAL PROVISIONS:

a.    The execution of this Deed of Trust by any person who has no present interest in the Property shall not be deemed to indicate that such an interest presently exists. Rather, execution of this Deed of Trust by such a person shall constitute such person's agreement that if such person hereafter acquires an interest in the Property, such interest shall be subject to the interest granted hereunder.

b.    The execution of this Deed of Trust by any person who has a present interest in the Property shall not in itself be deemed to indicate that such person is liable to Lender for any obligation described in Section 1., above. Any personal liability of such person to Lender shall be determined on an independent basis (such as execution of the document or documents evidencing the obligation described in Section 1., above). Execution of this Deed of Trust by any such person shall nevertheless indicate that such person's interest in the Property shall be subject to the interest granted hereunder.

● MERS HELOC - CA Deed of Trust
1D988-CA (10/00)                           Page 9 of 10

```
LS0572RLC1                    Nationstar Mortgage LLC                    8/10/15
LBAL1034                      Transaction History                      11:47:01
Loan#: 0617935499  UnPaidBal: 5,708,783.86   Arm Flag: Y  9/01/2015
Borr1: HOOMAN MOSHAR                 Property: 21 Skyridge
Borr2:                                         NEWPORT COAST, CA  92657
Info Available: Account Information Extensions Corporate Advances Message Codes
                Escrow Inf CTS PTPY Suspense Ttl Fees Disbursements
                                                                          SF
  Trn#   Posted    Effective      Description      Next Due   Total Amt  Code

  113  2/17/2012  2/17/2012 NON CASH FEE ADJUSTMENT 10/01/2008    942.58- WC
  112  1/17/2012  1/17/2012 NON CASH FEE ADJUSTMENT 10/01/2008    942.58- WC
  111 12/17/2011 12/17/2011 NON CASH FEE ADJUSTMENT 10/01/2008    942.58- WC
  110 11/17/2011 11/17/2011 NON CASH FEE ADJUSTMENT 10/01/2008    942.58- WC
  109 10/17/2011 10/17/2011 NON CASH FEE ADJUSTMENT 10/01/2008    942.58- WC
  108  9/17/2011  9/17/2011 NON CASH FEE ADJUSTMENT 10/01/2008    942.58- WC
  107  8/17/2011  8/17/2011 NON CASH FEE ADJUSTMENT 10/01/2008    942.58- WC
  106  7/17/2011  7/17/2011 NON CASH FEE ADJUSTMENT 10/01/2008    942.58- WC
  105  6/17/2011  6/17/2011 NON CASH FEE ADJUSTMENT 10/01/2008    942.58- WC
  104  5/17/2011  5/17/2011 NON CASH FEE ADJUSTMENT 10/01/2008    942.58- WC +


    F2=Switch F3=Exit F4=Prompt Info F6=Print Report F7=Sort Options F12=Return
```

```
LS0572RLC1                    Nationstar Mortgage LLC                  8/10/15
LBAL1034                       Transaction History                   11:47:01
Loan#: 0617935499  UnPaidBal: 5,708,783.86    Arm Flag: Y  9/01/2015
Borr1: HOOMAN MOSHAR            Property: 21 Skyridge
Borr2:                                   NEWPORT COAST, CA 92657
Info Available: Account Information Extensions Corporate Advances Message Codes
                Escrow Inf CTS PTPY Suspense Ttl Fees Disbursements

                                                                        SF
  Trn#  Posted      Effective       Description      Next Due  Total Amt Code

  123  12/17/2012  12/17/2012  NON CASH FEE ADJUSTMENT 10/01/2008    942.58- WC
  122  11/17/2012  11/17/2012  NON CASH FEE ADJUSTMENT 10/01/2008    942.58- WC
  121  10/17/2012  10/17/2012  NON CASH FEE ADJUSTMENT 10/01/2008    942.58- WC
  120   9/17/2012   9/17/2012  NON CASH FEE ADJUSTMENT 10/01/2008    942.58- WC
  119   8/17/2012   8/17/2012  NON CASH FEE ADJUSTMENT 10/01/2008    942.58- WC
  118   7/17/2012   7/17/2012  NON CASH FEE ADJUSTMENT 10/01/2008    942.58- WC
  117   6/17/2012   6/17/2012  NON CASH FEE ADJUSTMENT 10/01/2008    942.58- WC
  116   5/17/2012   5/17/2012  NON CASH FEE ADJUSTMENT 10/01/2008    942.58- WC
  115   4/17/2012   4/17/2012  NON CASH FEE ADJUSTMENT 10/01/2008    942.58- WC
  114   3/17/2012   3/17/2012  NON CASH FEE ADJUSTMENT 10/01/2008    942.58- WC +


  F2=Switch F3=Exit F4=Prompt Info F6=Print Report F7=Sort Options F12=Return
```

Exhibit B - Page 107



DOC ID #: 00014242923211006

The undersigned Trustors request that a copy of any notice of default, and of any notice of sale hereunder, be mailed to their respective addresses set forth below.

**By signing below, Trustor agrees to all the terms and conditions of this Deed of Trust.**

Mailing Address For Notices

HOOMAN MOSHAR
21 SKYRIDGE
NEWPORT COAST, CA 92657-1815

State of California
County of SAN DIEGO
On November 2, 2006, before me TERRi D. Adams, NOTARY
PUBLIC , personally appeared
HOOMAN MOSHAR

, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

TERRI D. ADAMS
COMM. #1685973
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
My Commission Expires
AUGUST 24, 2010

Terri D. Adams

● MERS HELOC - CA Deed of Trust
1D988-CA (10/08)                    Page 10 of 10

144

Prepared by: JOHNNA HOBDY

**AMERICA'S WHOLESALE LENDER**

Branch #: 0000775
1455 FRAZEE ROAD #102
SAN DIEGO, CA 92108
Phone: (619) 688-5100
Br Fax No.: (619) 688-9258

DATE:        11/02/2006
CASE #:
DOC ID #:    00014242923211006
BORROWER: HOOMAN MOSHAR
PROPERTY ADDRESS: 21 SKYRIDGE
              NEWPORT COAST, CA 92657-1815

## LEGAL DESCRIPTION EXHIBIT A

*FHA/VA/CONV*
*♦ Legal Description Exhibit A*
*1C404-XX (04/03)(d)*





---

YOUR REFERENCE: 060707JM                                    ORDER NO.: 2232733-JC

# EXHIBIT "A"

**PARCEL 1:**

LOT(S) 12 OF TRACT NO. 15604, IN THE CITY OF NEWPORT BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 773 PAGE(S) 1 TO 9 INCLUSIVE, OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA, AND AS AMENDED BY CERTIFICATE OF CORRECTION RECORDED JUNE 26, 2001 AS INSTRUMENT NO. 01-422896, OFFICIAL RECORDS.

EXCEPT THEREFROM ALL OIL, OIL RIGHTS, MINERALS, MINERAL RIGHTS, NATURAL GAS, NATURAL GAS RIGHTS, OTHER HYDROCARBONS AND ALL WATER BY WHATSOEVER NAME KNOWN THAT MAY BE WITHIN OR UNDER SAID LAND, TOGETHER WITH THE PERPETUAL RIGHT OF DRILLING, MINING, EXPLORING AND OPERATING THEREFORE AND REMOVING THE SAME FROM SAID LAND OR ANY OTHER LAND, INCLUDING THE RIGHT TO WHIPSTOCK OR DIRECTIONALLY DRILL AND MINE FROM LANDS OTHER THAN SAID LAND, OIL OR GAS WELLS, TUNNELS AND SHAFTS INTO, THROUGH OR ACROSS THE SUBSURFACE OF SAID LAND, AND TO BOTTOM SUCH WHIPSTOCKED OR DIRECTIONALLY DRILLED WELLS, TUNNELS AND SHAFT UNDER AND BENEATH OR BEYOND THE EXTERIOR LIMITS THEREOF, AND TO REDRILL, RETUNNEL, EQUIP, MAINTAIN, REPAIR, DEEPEN AND OPERATE ANY SUCH WEBS OR MINES, WITHOUT HOWEVER, THE RIGHT TO DRILL, MINE, EXPLORE AND OPERATE THROUGH THE SURFACE OR THE UPPER 500 FEET OF THE SUBSURFACE OF SAID LAND OR OTHERWISE IN SUCH MANNER AS TO ENDANGER THE SAFETY OF ANY HIGHWAY THAT MAY BE CONSTRUCTED ON SAID LANDS, AS RESERVED BY DEED RECORDED JANUARY 2, 1997 AS INSTRUMENT NO. 97-564, OFFICIAL RECORDS.

**PARCEL 2:**

EASEMENTS AS SET FORTH IN THE SECTION ENTITLED "EASEMENTS FOR OWNERS", "SUPPORT, SETTLEMENT AND ENCROACHMENT: AND "UTILITIES AND CABLE TELEVISION" OF THE ARTICLE ENTITLED "EASEMENTS AND OTHER RIGHTS OVER THE COVERED PROPERTY" OF THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR PELICAN CREST II COMMUNITY ASSOCIATION, RECORDED OCTOBER 9, 1998 AS INSTRUMENT NO. 98-687222 OFFICIAL RECORDS OF ORANGE COUNTY, CALIFORNIA (COLLECTIVELY THE "DECLARATION").

**PARCEL 3:**

EASEMENTS AS SET FORTH IN THE SUBSECTION ENTITLED "PEDESTRIAN TRAIL" OF THE SECTION ENTITLED "RESERVATIONS TO DECLARANT AND PARTICIPATING BUILDER" AND IN THE SECTIONS ENTITLED "EASEMENTS FOR OWNERS", "SUPPORT, SETTLEMENT AND ENCROACHMENT" AND "UTILITIES AND CABLE TELEVISION" OF THE ARTICLE ENTITLED "EASEMENTS AND RIGHTS" OF THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR NEWPORT COAST COMMUNITY ASSOCIATION, RECORDED MAY 24, 1991 AS INSTRUMENT NO. 91-257521 OFFICIAL RECORDS OF ORANGE COUNTY, CALIFORNIA, (THE "MASTER DECLARATION"), AND IN THE SUPPLEMENTARY DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR NEWPORT COAST COMMUNITY ASSOCIATION AND PELICAN CREST II (PHASE I), RECORDED OCTOBER 9, 1998 AS INSTRUMENT NO. 98-686540, OFFICIAL RECORDS.

DOC ID #: 00014242923211006

## PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this SECOND              day of
NOVEMBER, 2006  , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date, given by
the undersigned (the "Borrower") to secure Borrower's Note to
AMERICA'S WHOLESALE LENDER

(the "Lender") of the same date and covering the Property described in the Security Instrument and
located at:
            21 SKYRIDGE, NEWPORT COAST, CA 92657-1815

                        [Property Address]
The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with
other such parcels and certain common areas and facilities, as described in
THE COVENANTS, CONDITIONS, AND RESTRICTIONS FILED OF RECORD
THAT AFFECT THE PROPERTY

**MULTISTATE PUD RIDER** - Single Family/Second Mortgage
            Page 1 of 3
-207R (0411)  CHL (12/05)(d)
                        VMP Mortgage Solutions, Inc.                    3/99





Exhibit B - Page 111



DOC ID #: 00014242923211006

(the "Declaration"). The Property is a part of a planned unit development known as

PELICAN CREST

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the: (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Hazard Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Uniform Covenant 2 for the monthly payment to Lender of the yearly premium installments for hazard insurance on the Property; and (ii) Borrower's obligation under Uniform Covenant 5 to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage provided by the master or blanket policy.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C. Public Liability Insurance. Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D. Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Uniform Covenant 9.

VMP -207R (0411)   CHL (12/05)          Page 2 of 3                          3/99



DOC ID #: 00014242923211006

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)
HOOMAN MOSHAR                                - Borrower

_____ (Seal)
                                             - Borrower

_____ (Seal)
                                             - Borrower

_____ (Seal)
                                             - Borrower

-207R (0411)   CHL (12/05)          Page 3 of 3                    3/99

## ILLEGIBLE NOTARY DECLARATION

### GOVERNMENT CODE 27361.7

**I CERTIFY UNDER PENALTY OF PERJURY THAT THE NOTARY SEAL ON THE
DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS AS FOLLOWS:**

NAME OF NOTARY ___Terri D. Adams___

DATE COMMISSION EXPIRES ___Aug 24, 2010___

NOTARY IDENTIFICATION NUMBER ___1685873___

MANUFACTURER / VENDOR IDENTIFICATION NUMBER ___CSC 1___

COUNTY WHERE BOND IS FILED ___San Diego___

PLACE OF EXECUTION _____Norwalk, Ca._____

DATE ___NOVEMBER 9, 2006_____

SIGNATURE (FIRM NAME IF ANY)

EXHIBIT E

# EXHIBIT E

EXHIBIT E

Recording Requested By:

When Recorded Return To:

Kate Brown
Real Time Resolutions, Inc
1349 EMPIRE CENTRAL DRIVE
SUITE 150
Dallas, TX 75247-4029

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

$9.00

2014000213934 4:13 pm 06/02/14
65 406 A32 F13   1
0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Orange, California
SELLER'S SERVICING #:142429232 "MOSHAR"
SELLER'S LENDER ID#: 571

MERS #: 1001337000179764 15 SIS #: 1-888-679-6377

Prepared By: Kate Brown, REAL TIME RESOLUTIONS, INC 1349  EMPIRE CENTRAL DRIVE, SUITE 150, DALLAS, TX
75247-4029 214 599-6345

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR AMERICA'S
WHOLESALE LENDER hereby grants, assigns and transfers to REAL TIME RESOLUTIONS, INC. At 1349 EMPIRE
CENTRAL DRIVE, SUITE 150, DALLAS, TX 75247-4029 all its interest under that certain Deed of Trust dated
11/02/2006 , in the amount of $1,449,200.00, executed by HOOMAN MOSHAR, A MARRIED MAN AS HIS SOLE &
SEPARATE PROPERTY to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR
AMERICA'S WHOLESALE LENDER and Recorded:  11/09/2006  in Book/Reel/Liber: N/A Page/Folio: N/A as
Instrument No.: 2006000755949 in the County of Orange, State of California.

In witness whereof this instrument is executed.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR AMERICA'S WHOLESALE
LENDER
On _____3/28/14_____

SHAUNA BOEDEKER, VICE PRESIDENT

STATE OF Texas
COUNTY OF Dallas

On 3/28/14, before me, Scott Douglas McGhee, a Notary Public in and for the County of
Dallas, in the State of Texas the foregoing instrument was sworn to and subscribed by SHAUNA BOEDEKER, VICE
PRESIDENT who is personally known to me and who additionally  acknowledged said instrument to be the free act
and deed of the corporation.

WITNESS my hand and official seal.

Scott Douglas McGhee
Notary Expires 12/14/16

SCOTT DOUGLAS MCGHEE
Notary Public, State of Texas
My Commission Expires
December 14, 2016

(This area for notarial seal)

*KB*KBRELT*05/28/2014 11:55.29 AM* RELT04RELTA0000000000000000030631* CAORANG* 142429232 CASTATE_TRUST_ASSIGN_ASSN *KB*KBRELT*

EXHIBIT F

# EXHIBIT F

EXHIBIT F

```
LS0572RLC1                  Nationstar Mortgage LLC              8/10/15
LBAL1034                      Transaction History              11:47:01
Loan#: 0617935499   UnPaidBal: 5,708,783.86    Arm Flag: Y 9/01/2015
Borr1: HOOMAN MOSHAR              Property: 21 Skyridge
Borr2:                                    NEWPORT COAST, CA  92657
Info Available: Account Information Extensions Corporate Advances Message Codes
                Escrow Inf CTS PTPY Suspense Ttl Fees Disbursements
                                                                    SF
 Trn#   Posted      Effective    Description       Next Due   Total Amt  Code

 323  8/06/2015  8/06/2015 CORP ADV DISB         10/01/2008      15.00-  SC
 322  7/16/2015  7/16/2015 CORP ADV DISB         10/01/2008      15.00-  SC
 321  6/19/2015  6/19/2015 CORPORATE ADVANCE ADJUS 10/01/2008    15.00   BT
 320  6/18/2015  6/18/2015 CORP ADV DISB         10/01/2008      15.00-  SC
 319  6/03/2015  6/03/2015 CORP ADV DISB         10/01/2008      15.00-  SC
 318  5/27/2015  5/27/2015 CORPORATE ADVANCE ADJUS 10/01/2008  12972.00- AD
 317  5/27/2015  5/27/2015 ESCROW ADVANCE        10/01/2008   12972.00-  AD
 316  5/27/2015  5/27/2015 ESCROW DEPOSIT        10/01/2008   12972.00   AD
 315  5/27/2015  5/27/2015 HAZARD SFR DISBURSED  10/01/2008   12972.00-  WR
 314  5/27/2015  5/27/2015 HAZARD SFR ADVANCE    10/01/2008   12972.00   WR +


F2=Switch F3=Exit F4=Prompt Info F6=Print Report F7=Sort Options F12=Return
```

```
LS0572RLC1                  Nationstar Mortgage LLC                  8/10/15
LBAL1034                       Transaction History                 11:47:01
Loan#: 0617935499  UnPaidBal: 5,708,783.86   Arm Flag: Y 9/01/2015
Borr1: HOOMAN MOSHAR            Property: 21 Skyridge
Borr2:                                    NEWPORT COAST, CA  92657
Info Available: Account Information Extensions Corporate Advances Message Codes
                Escrow Inf CTS PTPY Suspense Ttl Fees Disbursements
                                                                        SF
      Trn#  Posted     Effective    Description      Next Due   Total Amt  Code

      313  5/04/2015  5/04/2015  CORP ADV DISB     10/01/2008      15.00-  SC
      312  4/21/2015  4/21/2015  CORP ADV DISB     10/01/2008      15.00-  SC
      311  4/16/2015  4/16/2015  LATE FEE ASSESSED 10/01/2008     999.99   __
      310  3/27/2015  3/27/2015  CORP ADV DISB     10/01/2008   50301.02-  SC
      309  3/19/2015  3/19/2015  CORP ADV DISB     10/01/2008      15.00-  SC
      308  3/17/2015  3/11/2015  ESCROW ADVANCE    10/01/2008    9703.00-  AD
      307  3/17/2015  3/11/2015  HAZARD SFR DEPOSIT 10/01/2008   9703.00   AD
      306  3/17/2015  3/06/2015  ESCROW ADJ        10/01/2008   70000.00-  SR
      305  3/17/2015  3/06/2015  ESCROW ADVANCE    10/01/2008   70000.00   SR
      304  3/17/2015  3/06/2015  NON CASH FEE ADJ-INCREA 10/01/2008 942.58 C_ +


      F2=Switch F3=Exit F4=Prompt Info F6=Print Report F7=Sort Options F12=Return
```

```
LS0572RLC1                   Nationstar Mortgage LLC              8/10/15
LBAL1034                     Transaction History                11:47:01
Loan#: 0617935499  UnPaidBal: 5,708,783.86   Arm Flag: Y 9/01/2015
Borr1: HOOMAN MOSHAR             Property: 21 Skyridge
Borr2:                                    NEWPORT COAST, CA 92657
Info Available: Account Information Extensions Corporate Advances Message Codes
                Escrow Inf CTS PTPY Suspense Ttl Fees Disbursements
                                                                      SF
   Trn#  Posted     Effective    Description       Next Due  Total Amt  Code

   303  3/17/2015  3/11/2015  REVERSAL (PRIOR DAY) 03 10/01/2008    9703.00- AD
   302  3/17/2015  3/11/2015  ESCROW ADVANCE        10/01/2008    9703.00  AD
   301  3/16/2015  3/16/2015  LATE FEE ASSESSED     10/01/2008     999.99
   300  3/16/2015  3/16/2015  ESCR REFUND DISBURSED 10/01/2008    9703.00- SC
   299  3/12/2015  3/11/2015  HAZARD SFR DEPOSIT    10/01/2008    9703.00  AD
   298  3/12/2015  3/06/2015  REVERSAL (PRIOR DAY)    10/01/2008 5708783.86- SR
   297  3/12/2015  3/11/2015  REVERSAL (PRIOR DAY) 03 10/01/2008    9703.00- WR
   296  3/11/2015  3/11/2015  HAZARD SFR DEPOSIT    10/01/2008    9703.00  WR
   295  3/06/2015  3/06/2015  PAYOFF NOCASH         10/01/2008 5708783.86  SR
   294  3/06/2015  3/06/2015  NON CASH FEE ADJUSTMENT 10/01/2008    942.58- D  +


F2=Switch F3=Exit F4=Prompt Info F6=Print Report F7=Sort Options F12=Return
```

```
LS0572RLC1                Nationstar Mortgage LLC              8/10/15
LBAL1034                    Transaction History              11:47:01
Loan#: 0617935499  UnPaidBal: 5,708,783.86   Arm Flag: Y 9/01/2015
Borr1: HOOMAN MOSHAR              Property: 21 Skyridge
Borr2:                              NEWPORT COAST, CA  92657
Info Available: Account Information Extensions Corporate Advances Message Codes
                Escrow Inf CTS PTPY Suspense Ttl Fees Disbursements
```

| Trn# | Posted | Effective | Description | Next Due | Total Amt | SF Code |
|------|--------|-----------|-------------|----------|-----------|---------|
| 293 | 3/06/2015 | 3/06/2015 | ESCROW ADVANCE | 10/01/2008 | 70000.00- | SR |
| 292 | 3/06/2015 | 3/06/2015 | ESCROW ADJ | 10/01/2008 | 70000.00 | SR |
| 291 | 3/06/2015 | 3/06/2015 | CORP ADV NOCASH ADJ- DE | 10/01/2008 | 95.16 | AD |
| 290 | 3/06/2015 | 3/06/2015 | CORP ADV NOCASH ADJ- DE | 10/01/2008 | 99999.99 | AD |
| 289 | 3/06/2015 | 3/06/2015 | CORP ADV NOCASH ADJ- DE | 10/01/2008 | 12606.00 | AD |
| 288 | 3/06/2015 | 3/06/2015 | CORP ADV NOCASH ADJ- DE | 10/01/2008 | 48982.37 | AD |
| 287 | 3/06/2015 | 3/06/2015 | CORP ADV NOCASH ADJ- DE | 10/01/2008 | 99999.99 | AD |
| 286 | 3/06/2015 | 3/06/2015 | CORP ADV NOCASH ADJ- DE | 10/01/2008 | 99999.99 | AD |
| 285 | 3/06/2015 | 3/06/2015 | CORP ADV NOCASH ADJ- DE | 10/01/2008 | 99999.99 | AD |
| 284 | 3/06/2015 | 3/06/2015 | CORP ADV NOCASH ADJ- DE | 10/01/2008 | 99999.99 | AD + |

```
F2=Switch F3=Exit F4=Prompt Info F6=Print Report F7=Sort Options F12=Return
```

```
LS0572RLC1                Nationstar Mortgage LLC              8/10/15
LBAL1034                   Transaction History                11:47:01
Loan#: 0617935499  UnPaidBal: 5,708,783.86    Arm Flag: Y 9/01/2015
Borr1: HOOMAN MOSHAR              Property: 21 Skyridge
Borr2:                                     NEWPORT COAST, CA  92657
Info Available: Account Information Extensions Corporate Advances Message Codes
                Escrow Inf CTS PTPY Suspense Ttl Fees Disbursements
                                                                      SF
     Trn#  Posted       Effective      Description       Next Due   Total Amt  Code

     283  3/06/2015  3/06/2015 CORP ADV NOCASH ADJ- DE 10/01/2008   99999.99   AD
     282  3/06/2015  3/06/2015 CORP ADV NOCASH ADJ- DE 10/01/2008   99999.99   AD
     281  3/06/2015  3/06/2015 CORP ADV NOCASH ADJ- DE 10/01/2008     330.00   AD
     280  3/06/2015  3/06/2015 CORP ADV NOCASH ADJ- DE 10/01/2008     225.00   AD
     279  3/06/2015  3/06/2015 CORP ADV NOCASH ADJ- DE 10/01/2008      24.00   AD
     278  3/06/2015  3/06/2015 CORP ADV NOCASH ADJ- DE 10/01/2008    2009.91   AD
     277  3/06/2015  3/06/2015 CORP ADV NOCASH ADJ- DE 10/01/2008    1753.75   AD
     276  3/06/2015  3/06/2015 CORP ADV NOCASH ADJ- DE 10/01/2008      54.98   AD
     275  3/06/2015  3/06/2015 CORP ADV NOCASH ADJ- DE 10/01/2008   10966.70   AD
     274  3/06/2015  3/06/2015 CORP ADV NOCASH ADJ- DE 10/01/2008    5050.50   AD +


F2=Switch F3=Exit F4=Prompt Info F6=Print Report F7=Sort Options F12=Return
```

Exhibit B - Page 122

```
LS0572RLC1                    Nationstar Mortgage LLC                    8/10/15
LBAL1034                        Transaction History                     11:47:01
Loan#: 0617935499   UnPaidBal: 5,708,783.86   Arm Flag: Y 9/01/2015
Borr1: HOOMAN MOSHAR                    Property: 21 Skyridge
Borr2:                                           NEWPORT COAST, CA  92657
Info Available: Account Information Extensions Corporate Advances Message Codes
                Escrow Inf CTS PTPY Suspense Ttl Fees Disbursements
                                                                          SF
     Trn#  Posted      Effective      Description      Next Due   Total Amt  Code

     273  2/12/2015  2/12/2015  CORP ADV DISB    10/01/2008      15.00-  SC
     272  1/31/2015  1/31/2015  CORP ADV DISB    10/01/2008    6869.70-  SC
     271  1/31/2015  1/31/2015  CORP ADV DISB    10/01/2008      25.00-  SC
     270  1/31/2015  1/31/2015  CORP ADV DISB    10/01/2008       9.95-  SC
     269  1/31/2015  1/31/2015  CORP ADV DISB    10/01/2008        .48-  SC
     268  1/31/2015  1/31/2015  CORP ADV DISB    10/01/2008       9.14-  SC
     267  1/31/2015  1/31/2015  CORP ADV DISB    10/01/2008      61.00-  SC
     266  1/31/2015  1/31/2015  CORP ADV DISB    10/01/2008     154.00-  SC
     265  1/31/2015  1/31/2015  CORP ADV DISB    10/01/2008     244.00-  SC
     264  1/31/2015  1/31/2015  CORP ADV DISB    10/01/2008      77.00-  SC  +


     F2=Switch F3=Exit F4=Prompt Info F6=Print Report F7=Sort Options F12=Return
```

```
LS0572RLC1                Nationstar Mortgage LLC                    8/10/15
LBAL1034                   Transaction History                     11:47:01
Loan#: 0617935499   UnPaidBal: 5,708,783.86   Arm Flag: Y 9/01/2015
Borr1: HOOMAN MOSHAR                 Property: 21 Skyridge
Borr2:                                         NEWPORT COAST, CA  92657
Info Available: Account Information Extensions Corporate Advances Message Codes
                Escrow Inf CTS PTPY Suspense Ttl Fees Disbursements
                                                                          SF
     Trn#   Posted     Effective       Description        Next Due  Total Amt Code

     263   1/31/2015  1/31/2015  CORP ADV DISB      10/01/2008    339.00-  SC
     262   1/31/2015  1/31/2015  CORP ADV DISB      10/01/2008    110.00-  SC
     261   1/31/2015  1/31/2015  CORP ADV DISB      10/01/2008     99.00-  SC
     260   1/31/2015  1/31/2015  CORP ADV DISB      10/01/2008     99.00-  SC
     259   1/31/2015  1/31/2015  CORP ADV DISB      10/01/2008     64.08-  SC
     258   1/31/2015  1/31/2015  CORP ADV DISB      10/01/2008     64.08-  SC
     257   1/31/2015  1/31/2015  CORP ADV DISB      10/01/2008     89.00-  SC
     256   1/31/2015  1/31/2015  CORP ADV DISB      10/01/2008     25.00-  SC
     255   1/31/2015  1/31/2015  CORP ADV DISB      10/01/2008     25.00-  SC
     254   1/31/2015  1/31/2015  CORP ADV DISB      10/01/2008     25.00-  SC +


F2=Switch F3=Exit F4=Prompt Info F6=Print Report F7=Sort Options F12=Return
```

```
LS0572RLC1                Nationstar Mortgage LLC              8/10/15
LBAL1034                   Transaction History               11:47:01
Loan#: 0617935499  UnPaidBal: 5,708,783.86   Arm Flag: Y  9/01/2015
Borr1: HOOMAN MOSHAR             Property: 21 Skyridge
Borr2:                                     NEWPORT COAST, CA  92657
Info Available: Account Information Extensions Corporate Advances Message Codes
                Escrow Inf CTS PTPY Suspense Ttl Fees Disbursements
                                                                   SF
   Trn#  Posted     Effective        Description      Next Due   Total Amt  Code

   253  1/31/2015  1/31/2015  CORP ADV DISB          10/01/2008     25.00-  SC
   252  1/31/2015  1/31/2015  CORP ADV DISB          10/01/2008     25.00-  SC
   251  1/31/2015  1/31/2015  CORP ADV DISB          10/01/2008    444.95-  SC
   250 12/31/2014 12/31/2014  CORP ADV DISB          10/01/2008     15.00-  SC
   249 12/16/2014 12/16/2014  CORP ADV DISB          10/01/2008     15.00-  SC
   248 12/09/2014 12/09/2014  CORPORATE ADVANCE ADJUS 10/01/2008  12972.00- AD
   247 12/09/2014 12/09/2014  ESCROW ADVANCE         10/01/2008  12972.00- AD
   246 12/09/2014 12/09/2014  ESCROW DEPOSIT         10/01/2008  12972.00  AD
   245 12/09/2014 12/09/2014  HAZARD SFR DISBURSED   10/01/2008  12972.00- WR
   244 12/09/2014 12/09/2014  HAZARD SFR ADVANCE     10/01/2008  12972.00  WR +

       F2=Switch F3=Exit F4=Prompt Info F6=Print Report F7=Sort Options F12=Return
```

```
LS0572RLC1                  Nationstar Mortgage LLC                    8/10/15
LBAL1034                      Transaction History                    11:47:01
Loan#: 0617935499   UnPaidBal: 5,708,783.86    Arm Flag: Y 9/01/2015
Borr1: HOOMAN MOSHAR              Property: 21 Skyridge
Borr2:                                     NEWPORT COAST, CA 92657
Info Available: Account Information Extensions Corporate Advances Message Codes
                Escrow Inf CTS PTPY Suspense Ttl Fees Disbursements
                                                                         SF
    Trn# Posted      Effective      Description      Next Due  Total Amt Code

    243 11/14/2014 11/14/2014 CORP ADV DISB        10/01/2008 50301.02- WR
    242 11/04/2014 11/04/2014 CORP ADV DISB        10/01/2008    15.00- WR
    241 10/31/2014 10/31/2014 CORP ADV DISB        10/01/2008   172.00- SC
    240 10/31/2014 10/31/2014 CORP ADV DISB        10/01/2008    42.00- SC
    239 10/31/2014 10/31/2014 CORP ADV DISB        10/01/2008   168.00- SC
    238 10/31/2014 10/31/2014 CORP ADV DISB        10/01/2008    42.00- SC
    237 10/31/2014 10/31/2014 CORP ADV DISB        10/01/2008    30.00- SC
    236 10/31/2014 10/31/2014 CORP ADV DISB        10/01/2008   147.00- SC
    235 10/31/2014 10/31/2014 CORP ADV DISB        10/01/2008    63.00- SC
    234 10/31/2014 10/31/2014 CORP ADV DISB        10/01/2008    60.00- SC +


    F2=Switch F3=Exit F4=Prompt Info F6=Print Report F7=Sort Options F12=Return
```

```
LS0572RLC1                 Nationstar Mortgage LLC              8/10/15
LBAL1034                    Transaction History               11:47:01
Loan#: 0617935499  UnPaidBal: 5,708,783.86   Arm Flag: Y 9/01/2015
Borr1: HOOMAN MOSHAR              Property: 21 Skyridge
Borr2:                                     NEWPORT COAST, CA  92657
Info Available: Account Information Extensions Corporate Advances Message Codes
                Escrow Inf CTS PTPY Suspense Ttl Fees Disbursements
```

|     |            |            |               |          |            | SF   |
|-----|------------|------------|---------------|----------|------------|------|
| Trn#| Posted     | Effective  | Description   | Next Due | Total Amt  | Code |
| 233 | 10/31/2014 | 10/31/2014 | CORP ADV DISB | 10/01/2008 | 105.00-  | SC   |
| 232 | 10/31/2014 | 10/31/2014 | CORP ADV DISB | 10/01/2008 |  90.00-  | SC   |
| 231 | 10/31/2014 | 10/31/2014 | CORP ADV DISB | 10/01/2008 |  90.00-  | SC   |
| 230 | 10/31/2014 | 10/31/2014 | CORP ADV DISB | 10/01/2008 |  30.00-  | SC   |
| 229 | 10/31/2014 | 10/31/2014 | CORP ADV DISB | 10/01/2008 |  50.00-  | SC   |
| 228 | 10/31/2014 | 10/31/2014 | CORP ADV DISB | 10/01/2008 |  30.00-  | SC   |
| 227 | 10/31/2014 | 10/31/2014 | CORP ADV DISB | 10/01/2008 |  42.00-  | SC   |
| 226 | 10/31/2014 | 10/31/2014 | CORP ADV DISB | 10/01/2008 |  42.00-  | SC   |
| 225 | 10/31/2014 | 10/31/2014 | CORP ADV DISB | 10/01/2008 |  42.00-  | SC   |
| 224 | 10/31/2014 | 10/31/2014 | CORP ADV DISB | 10/01/2008 |  90.00-  | SC + |

```
F2=Switch F3=Exit F4=Prompt Info F6=Print Report F7=Sort Options F12=Return
```

```
LS0572RLC1                 Nationstar Mortgage LLC              8/10/15
LBAL1034                     Transaction History              11:47:01
Loan#: 0617935499 UnPaidBal: 5,708,783.86   Arm Flag: Y 9/01/2015
Borr1: HOOMAN MOSHAR             Property: 21 Skyridge
Borr2:                                    NEWPORT COAST, CA  92657
Info Available: Account Information Extensions Corporate Advances Message Codes
                Escrow Inf CTS PTPY Suspense Ttl Fees Disbursements
                                                                       SF
   Trn#  Posted      Effective      Description     Next Due  Total Amt  Code

   223 10/31/2014 10/31/2014 CORP ADV DISB     10/01/2008     42.00- SC
   222 10/31/2014 10/31/2014 CORP ADV DISB     10/01/2008     42.00- SC
   221 10/31/2014 10/31/2014 CORP ADV DISB     10/01/2008     42.00- SC
   220 10/31/2014 10/31/2014 CORP ADV DISB     10/01/2008     63.00- SC
   219 10/31/2014 10/31/2014 CORP ADV DISB     10/01/2008     42.00- SC
   218 10/31/2014 10/31/2014 CORP ADV DISB     10/01/2008     42.00- SC
   217 10/31/2014 10/31/2014 CORP ADV DISB     10/01/2008     42.00- SC
   216 10/31/2014 10/31/2014 CORP ADV DISB     10/01/2008     42.00- SC
   215 10/31/2014 10/31/2014 CORP ADV DISB     10/01/2008     42.00- SC
   214 10/31/2014 10/31/2014 CORP ADV DISB     10/01/2008     42.00- SC +


   F2=Switch F3=Exit F4=Prompt Info F6=Print Report F7=Sort Options F12=Return
```

```
LS0572RLC1                Nationstar Mortgage LLC                 8/10/15
LBAL1034                     Transaction History                 11:47:01
Loan#: 0617935499  UnPaidBal: 5,708,783.86   Arm Flag: Y 9/01/2015
Borr1: HOOMAN MOSHAR                 Property: 21 Skyridge
Borr2:                                         NEWPORT COAST, CA  92657
Info Available: Account Information Extensions Corporate Advances Message Codes
                Escrow Inf CTS PTPY Suspense Ttl Fees Disbursements
                                                                      SF
  Trn#  Posted      Effective       Description      Next Due  Total Amt  Code

  213 10/31/2014 10/31/2014 CORP ADV DISB      10/01/2008      42.00- SC
  212 10/31/2014 10/31/2014 CORP ADV DISB      10/01/2008     494.50- SC
  211 10/31/2014 10/31/2014 CORP ADV DISB      10/01/2008     150.50- SC
  210 10/31/2014 10/31/2014 CORP ADV DISB      10/01/2008      30.00- SC
  209 10/31/2014 10/31/2014 CORP ADV DISB      10/01/2008     322.50- SC
  208 10/31/2014 10/31/2014 CORP ADV DISB      10/01/2008     580.50- SC
  207 10/31/2014 10/31/2014 CORP ADV DISB      10/01/2008      43.00- SC
  206 10/31/2014 10/31/2014 CORP ADV DISB      10/01/2008      43.00- SC
  205 10/31/2014 10/31/2014 CORP ADV DISB      10/01/2008      43.00- SC
  204 10/31/2014 10/31/2014 CORP ADV DISB      10/01/2008      43.00- SC +


F2=Switch F3=Exit F4=Prompt Info F6=Print Report F7=Sort Options F12=Return
```

```
LS0572RLC1                Nationstar Mortgage LLC              8/10/15
LBAL1034                    Transaction History             11:47:01
Loan#: 0617935499  UnPaidBal: 5,708,783.86   Arm Flag: Y 9/01/2015
Borr1: HOOMAN MOSHAR           Property: 21 Skyridge
Borr2:                                  NEWPORT COAST, CA  92657
Info Available: Account Information Extensions Corporate Advances Message Codes
                Escrow Inf CTS PTPY Suspense Ttl Fees Disbursements
                                                                   SF
      Posted    Effective        Description        Next Due  Total Amt  Code
Trn#
  203 10/31/2014 10/31/2014 CORP ADV DISB          10/01/2008      43.00- SC
  202 10/31/2014 10/31/2014 CORP ADV DISB          10/01/2008      86.00- SC
  201 10/31/2014 10/31/2014 CORP ADV DISB          10/01/2008     107.50- SC
  200 10/31/2014 10/31/2014 CORP ADV DISB          10/01/2008      43.00- SC
  199 10/31/2014 10/31/2014 CORP ADV DISB          10/01/2008      43.00- SC
  198 10/31/2014 10/31/2014 CORP ADV DISB          10/01/2008      43.00- SC
  197 10/31/2014 10/31/2014 CORP ADV DISB          10/01/2008      86.00- SC
  196 10/31/2014 10/31/2014 CORP ADV DISB          10/01/2008      86.00- SC
  195 10/31/2014 10/31/2014 CORP ADV DISB          10/01/2008      43.00- SC
  194 10/31/2014 10/31/2014 CORP ADV DISB          10/01/2008     444.95- SC +


F2=Switch F3=Exit F4=Prompt Info F6=Print Report F7=Sort Options F12=Return
```

```
LS0572RLC1               Nationstar Mortgage LLC              8/10/15
LBAL1034                  Transaction History                11:47:01
Loan#: 0617935499  UnPaidBal: 5,708,783.86   Arm Flag: Y 9/01/2015
Borr1: HOOMAN MOSHAR              Property: 21 Skyridge
Borr2:                                     NEWPORT COAST, CA  92657
Info Available: Account Information Extensions Corporate Advances Message Codes
                Escrow Inf CTS PTPY Suspense Ttl Fees Disbursements
```

|     |            |            |                  |            |            | SF   |
|-----|------------|------------|------------------|------------|------------|------|
| Trn#| Posted     | Effective  | Description      | Next Due   | Total Amt  | Code |
| 193 | 10/31/2014 | 10/31/2014 | CORP ADV DISB    | 10/01/2008 |   444.95-  | SC   |
| 192 | 10/31/2014 | 10/31/2014 | CORP ADV DISB    | 10/01/2008 |    45.36-  | SC   |
| 191 | 10/31/2014 | 10/31/2014 | CORP ADV DISB    | 10/01/2008 |     9.95-  | SC   |
| 190 | 10/20/2014 | 10/20/2014 | CORP ADV DISB    | 10/01/2008 |    15.00-  | WR   |
| 189 | 10/17/2014 | 10/17/2014 | CORP ADV DISB    | 10/01/2008 |    15.00-  | WR   |
| 188 | 10/03/2014 | 10/03/2014 | CORP ADV DISB    | 10/01/2008 |    15.00-  | WR   |
| 187 |  9/18/2014 |  9/18/2014 | CORP ADV DISB    | 10/01/2008 |   130.00-  | SC   |
| 186 |  8/12/2014 |  8/12/2014 | CORP ADV DISB    | 10/01/2008 |    15.00-  | WR   |
| 185 |  7/25/2014 |  7/25/2014 | CORP ADV DISB    | 10/01/2008 |    15.00-  | WR   |
| 184 |  6/16/2014 |  6/16/2014 | CORP ADV DISB    | 10/01/2008 |    15.00-  | WR + |

```
F2=Switch F3=Exit F4=Prompt Info F6=Print Report F7=Sort Options F12=Return
```

```
LS0572RLC1              Nationstar Mortgage LLC              8/10/15
LBAL1034                  Transaction History              11:47:01
Loan#: 0617935499  UnPaidBal: 5,708,783.86   Arm Flag: Y 9/01/2015
Borr1: HOOMAN MOSHAR              Property: 21 Skyridge
Borr2:                                    NEWPORT COAST, CA 92657
Info Available: Account Information Extensions Corporate Advances Message Codes
                Escrow Inf CTS PTPY Suspense Ttl Fees Disbursements
```

| | | | | | | SF |
|---|---|---|---|---|---|---|
| Trn# | Posted | Effective | Description | Next Due | Total Amt | Code |
| 183 | 6/12/2014 | 6/12/2014 | CORP ADV DISB | 10/01/2008 | 15.00- | WR |
| 182 | 5/27/2014 | 5/27/2014 | CORP ADV DISB | 10/01/2008 | 15.00- | WR |
| 181 | 5/05/2014 | 5/05/2014 | CORP ADV DISB | 10/01/2008 | 15.00- | WR |
| 180 | 4/24/2014 | 4/24/2014 | CORP ADV DISB | 10/01/2008 | 15.00- | WR |
| 179 | 4/03/2014 | 4/03/2014 | CORP ADV DISB | 10/01/2008 | 95.00- | SC |
| 178 | 4/03/2014 | 4/03/2014 | CORP ADV DISB | 10/01/2008 | 49794.13- | SC |
| 177 | 4/03/2014 | 4/03/2014 | CORPORATE ADVANCE ADJUS | 10/01/2008 | 25617.19- | AD |
| 176 | 4/03/2014 | 4/03/2014 | ESCROW ADVANCE | 10/01/2008 | 25617.19- | AD |
| 175 | 4/03/2014 | 4/03/2014 | ESCROW DEPOSIT | 10/01/2008 | 25617.19 | AD |
| 174 | 3/28/2014 | 3/28/2014 | HAZARD SFR DISBURSED | 10/01/2008 | 6303.00- | WR + |

```
F2=Switch F3=Exit F4=Prompt Info F6=Print Report F7=Sort Options F12=Return
```

```
LS0572RLC1                  Nationstar Mortgage LLC                    8/10/15
LBAL1034                      Transaction History                    11:47:01
Loan#: 0617935499  UnPaidBal: 5,708,783.86   Arm Flag: Y  9/01/2015
Borr1: HOOMAN MOSHAR              Property: 21 Skyridge
Borr2:                                      NEWPORT COAST, CA  92657
Info Available: Account Information Extensions Corporate Advances Message Codes
                Escrow Inf CTS PTPY Suspense Ttl Fees Disbursements
                                                                          SF
  Trn#   Posted      Effective    Description        Next Due  Total Amt  Code

  173  3/28/2014   3/28/2014  HAZARD SFR ADVANCE      10/01/2008  6303.00   WR
  172  3/10/2014   3/10/2014  ESCROW ADVANCE          10/01/2008  6303.00-  AD
  171  3/10/2014   3/10/2014  ESCROW ADJ              10/01/2008  6303.00   AD
  170  3/10/2014   3/10/2014  CORPORATE ADVANCE ADJUS 10/01/2008  6303.00-  AD
  169  2/28/2014   2/28/2014  HAZARD SFR DISBURSED    10/01/2008  6303.00   WR
  168  2/28/2014   2/28/2014  HAZARD SFR ADVANCE      10/01/2008  6303.00   WR
  167  2/25/2014   2/25/2014  ESCROW ADVANCE          10/01/2008  6303.00-  AD
  166  2/25/2014   2/25/2014  ESCROW ADJ              10/01/2008  6303.00   AD
  165  2/25/2014   2/25/2014  CORPORATE ADVANCE ADJUS 10/01/2008  6303.00-  AD
  164  1/22/2014   1/22/2014  CORP ADV DISB           10/01/2008    15.00-  SC +


  F2=Switch F3=Exit F4=Prompt Info F6=Print Report F7=Sort Options F12=Return
```

```
LS0572RLC1                 Nationstar Mortgage LLC              8/10/15
LBAL1034                     Transaction History              11:47:01
Loan#: 0617935499  UnPaidBal: 5,708,783.86   Arm Flag: Y  9/01/2015
Borr1: HOOMAN MOSHAR               Property: 21 Skyridge
Borr2:                                       NEWPORT COAST, CA  92657
Info Available: Account Information Extensions Corporate Advances Message Codes
                Escrow Inf CTS PTPY Suspense Ttl Fees Disbursements
```

|       |            |           |                       |            |           | SF    |
|-------|------------|-----------|-----------------------|------------|-----------|-------|
| Trn#  | Posted     | Effective | Description           | Next Due   | Total Amt | Code  |
| 163   | 12/18/2013 | 12/18/2013 | CORP ADV DISB        | 10/01/2008 | 15.00-    | SC    |
| 162   | 12/13/2013 | 12/05/2013 | ESCROW ADVANCE       | 10/01/2008 | 4382.80-  | WR    |
| 161   | 12/13/2013 | 12/05/2013 | HAZARD SFR DEPOSIT   | 10/01/2008 | 4382.80   | WR    |
| 160   | 12/09/2013 | 12/01/2013 | CORPORATE ADVANCE ADJUS | 10/01/2008 | 10393.18- | NL  |
| 159   | 12/09/2013 | 12/01/2013 | CORPORATE ADVANCE ADJUS | 10/01/2008 | 99999.99- | NL  |
| 158   | 12/09/2013 | 12/01/2013 | CORPORATE ADVANCE ADJUS | 10/01/2008 | 99999.99- | NL  |
| 157   | 12/09/2013 | 12/01/2013 | CORPORATE ADVANCE ADJUS | 10/01/2008 | 99999.99- | NL  |
| 156   | 12/09/2013 | 12/01/2013 | CORPORATE ADVANCE ADJUS | 10/01/2008 | 99999.99- | NL  |
| 155   | 12/09/2013 | 12/01/2013 | CORPORATE ADVANCE ADJUS | 10/01/2008 | 99999.99- | NL  |
| 154   | 12/09/2013 | 12/01/2013 | CORPORATE ADVANCE ADJUS | 10/01/2008 | 99999.99- | NL + |

```
F2=Switch F3=Exit F4=Prompt Info F6=Print Report F7=Sort Options F12=Return
```

```
LS0572RLC1                 Nationstar Mortgage LLC                    8/10/15
LBAL1034                     Transaction History                    11:47:01
Loan#: 0617935499  UnPaidBal: 5,708,783.86   Arm Flag: Y 9/01/2015
Borr1: HOOMAN MOSHAR               Property: 21 Skyridge
Borr2:                                       NEWPORT COAST, CA  92657
Info Available: Account Information Extensions Corporate Advances Message Codes
                Escrow Inf CTS PTPY Suspense Ttl Fees Disbursements
```

| | | | | | | SF |
|---|---|---|---|---|---|---|
| Trn# | Posted | Effective | Description | Next Due | Total Amt | Code |
| 153 | 12/09/2013 | 12/01/2013 | ESCROW ADJUSTMENT | 10/01/2008 | 99999.99- | NL |
| 152 | 12/09/2013 | 12/01/2013 | ESCROW ADVANCE | 10/01/2008 | 99999.99 | NL |
| 151 | 12/05/2013 | 10/15/2013 | CORP ADV NOCASH ADJ | 10/01/2008 | 15.00- | AD |
| 150 | 12/05/2013 | 8/29/2013 | CORP ADV NOCASH ADJ | 10/01/2008 | 15.00- | AD |
| 149 | 12/05/2013 | 7/29/2013 | CORP ADV NOCASH ADJ | 10/01/2008 | 15.00- | AD |
| 148 | 12/05/2013 | 6/13/2013 | CORP ADV NOCASH ADJ | 10/01/2008 | 15.00- | AD |
| 147 | 12/05/2013 | 5/13/2013 | CORP ADV NOCASH ADJ | 10/01/2008 | 15.00- | AD |
| 146 | 12/05/2013 | 4/16/2013 | CORP ADV NOCASH ADJ | 10/01/2008 | 15.00- | AD |
| 145 | 12/05/2013 | 10/16/2009 | CORP ADV NOCASH ADJ | 10/01/2008 | 15.00- | AD |
| 144 | 12/05/2013 | 5/25/2012 | CORP ADV NOCASH ADJ | 10/01/2008 | 51.40- | AD + |

```
F2=Switch F3=Exit F4=Prompt Info F6=Print Report F7=Sort Options F12=Return
```

```
LS0572RLC1                    Nationstar Mortgage LLC              8/10/15
LBAL1034                        Transaction History              11:47:01
Loan#: 0617935499  UnPaidBal: 5,708,783.86   Arm Flag: Y 9/01/2015
Borr1: HOOMAN MOSHAR            Property: 21 Skyridge
Borr2:                                    NEWPORT COAST, CA  92657
Info Available: Account Information Extensions Corporate Advances Message Codes
                Escrow Inf CTS PTPY Suspense Ttl Fees Disbursements
                                                                        SF
Trn#  Posted     Effective     Description        Next Due   Total Amt Code

 143 12/05/2013   5/25/2012  CORP ADV NOCASH ADJ  10/01/2008    160.00- AD
 142 12/05/2013  10/24/2013  CORP ADV NOCASH ADJ  10/01/2008      9.00- AD
 141 12/05/2013   1/09/2013  CORP ADV NOCASH ADJ  10/01/2008     30.60- AD
 140 12/05/2013  11/18/2013  CORP ADV NOCASH ADJ  10/01/2008    300.00- AD
 139 12/05/2013  11/10/2009  CORP ADV NOCASH ADJ  10/01/2008   4097.00- AD
 138 12/05/2013   3/31/2011  CORP ADV NOCASH ADJ  10/01/2008    195.00- AD
 137 12/05/2013   5/25/2012  CORP ADV NOCASH ADJ  10/01/2008    698.75- AD
 136 12/05/2013   4/07/2010  CORP ADV NOCASH ADJ  10/01/2008    325.00- AD
 135 12/05/2013  12/05/2013  LATE FEE ASSESSED    10/01/2008    942.58
 134 11/17/2013  11/17/2013  NON CASH FEE ADJUSTMENT 10/01/2008 942.58- WC +

F2=Switch F3=Exit F4=Prompt Info F6=Print Report F7=Sort Options F12=Return
```

```
LS0572RLC1              Nationstar Mortgage LLC              8/10/15
LBAL1034                Transaction History                11:47:01
Loan#: 0617935499  UnPaidBal: 5,708,783.86   Arm Flag: Y  9/01/2015
Borr1: HOOMAN MOSHAR              Property: 21 Skyridge
Borr2:                                     NEWPORT COAST, CA 92657
Info Available: Account Information Extensions Corporate Advances Message Codes
                Escrow Inf CTS PTPY Suspense Ttl Fees Disbursements
                                                                      SF
 Trn#  Posted      Effective        Description      Next Due   Total Amt  Code

 133 10/17/2013 10/17/2013 NON CASH FEE ADJUSTMENT 10/01/2008     942.58-  WC
 132  9/17/2013  9/17/2013 NON CASH FEE ADJUSTMENT 10/01/2008     942.58-  WC
 131  8/17/2013  8/17/2013 NON CASH FEE ADJUSTMENT 10/01/2008     942.58-  WC
 130  7/17/2013  7/17/2013 NON CASH FEE ADJUSTMENT 10/01/2008     942.58-  WC
 129  6/17/2013  6/17/2013 NON CASH FEE ADJUSTMENT 10/01/2008     942.58-  WC
 128  5/17/2013  5/17/2013 NON CASH FEE ADJUSTMENT 10/01/2008     942.58-  WC
 127  4/17/2013  4/17/2013 NON CASH FEE ADJUSTMENT 10/01/2008     942.58-  WC
 126  3/17/2013  3/17/2013 NON CASH FEE ADJUSTMENT 10/01/2008     942.58-  WC
 125  2/17/2013  2/17/2013 NON CASH FEE ADJUSTMENT 10/01/2008     942.58-  WC
 124  1/17/2013  1/17/2013 NON CASH FEE ADJUSTMENT 10/01/2008     942.58-  WC +


  F2=Switch F3=Exit F4=Prompt Info F6=Print Report F7=Sort Options F12=Return
```

```
LS0572RLC1                  Nationstar Mortgage LLC                    8/10/15
LBAL1034                      Transaction History                    11:47:01
Loan#: 0617935499  UnPaidBal: 5,708,783.86   Arm Flag: Y  9/01/2015
Borr1: HOOMAN MOSHAR                    Property: 21 Skyridge
Borr2:                                            NEWPORT COAST, CA  92657
Info Available: Account Information Extensions Corporate Advances Message Codes
                Escrow Inf CTS PTPY Suspense Ttl Fees Disbursements
                                                                          SF
Trn#  Posted      Effective        Description        Next Due  Total Amt Code

103  4/17/2011   4/17/2011 NON CASH FEE ADJUSTMENT 10/01/2008     942.58- WC
102  3/17/2011   3/17/2011 NON CASH FEE ADJUSTMENT 10/01/2008     942.58- WC
101  2/17/2011   2/17/2011 NON CASH FEE ADJUSTMENT 10/01/2008     942.58- WC
100  1/17/2011   1/17/2011 NON CASH FEE ADJUSTMENT 10/01/2008     942.58- WC
 99 12/17/2010  12/17/2010 NON CASH FEE ADJUSTMENT 10/01/2008     942.58- WC
 98 11/17/2010  11/17/2010 NON CASH FEE ADJUSTMENT 10/01/2008     942.58- WC
 97 10/17/2010  10/17/2010 NON CASH FEE ADJUSTMENT 10/01/2008     942.58- WC
 96  9/17/2010   9/17/2010 NON CASH FEE ADJUSTMENT 10/01/2008     942.58- WC
 95  8/17/2010   8/17/2010 NON CASH FEE ADJUSTMENT 10/01/2008     942.58- WC
 94  7/17/2010   7/17/2010 NON CASH FEE ADJUSTMENT 10/01/2008     942.58- WC +


F2=Switch F3=Exit F4=Prompt Info F6=Print Report F7=Sort Options F12=Return
```

```
LS0572RLC1                 Nationstar Mortgage LLC                    8/10/15
LBAL1034                     Transaction History                    11:47:01
Loan#: 0617935499  UnPaidBal: 5,708,783.86    Arm Flag: Y 9/01/2015
Borr1: HOOMAN MOSHAR                   Property: 21 Skyridge
Borr2:                                           NEWPORT COAST, CA 92657
Info Available: Account Information Extensions Corporate Advances Message Codes
                Escrow Inf CTS PTPY Suspense Ttl Fees Disbursements
                                                                        SF
  Trn#  Posted      Effective      Description      Next Due  Total Amt  Code

   93  6/17/2010   6/17/2010  NON CASH FEE ADJUSTMENT 10/01/2008   942.58- WC
   92  5/17/2010   5/17/2010  NON CASH FEE ADJUSTMENT 10/01/2008   942.58- WC
   91  4/17/2010   4/17/2010  NON CASH FEE ADJUSTMENT 10/01/2008   942.58- WC
   90  3/17/2010   3/17/2010  NON CASH FEE ADJUSTMENT 10/01/2008   942.58- WC
   89  2/17/2010   2/17/2010  NON CASH FEE ADJUSTMENT 10/01/2008   942.58- WC
   88  1/17/2010   1/17/2010  NON CASH FEE ADJUSTMENT 10/01/2008   942.58- WC
   87 12/17/2009  12/17/2009  NON CASH FEE ADJUSTMENT 10/01/2008   942.58- WC
   86 11/17/2009  11/17/2009  NON CASH FEE ADJUSTMENT 10/01/2008   942.58- WC
   85 10/17/2009  10/17/2009  NON CASH FEE ADJUSTMENT 10/01/2008   942.58- WC
   84  9/17/2009   9/17/2009  NON CASH FEE ADJUSTMENT 10/01/2008   942.58- WC +


 F2=Switch F3=Exit F4=Prompt Info F6=Print Report F7=Sort Options F12=Return
```

```
LS0572RLC1                  Nationstar Mortgage LLC                    8/10/15
LBAL1034                     Transaction History                     11:47:01
Loan#: 0617935499  UnPaidBal: 5,708,783.86   Arm Flag: Y  9/01/2015
Borr1: HOOMAN MOSHAR                Property: 21 Skyridge
Borr2:                                        NEWPORT COAST, CA  92657
Info Available: Account Information Extensions Corporate Advances Message Codes
                Escrow Inf CTS PTPY Suspense Ttl Fees Disbursements
                                                                        SF
     Trn#  Posted      Effective        Description       Next Due   Total Amt  Code
     83   8/17/2009   8/17/2009  NON CASH FEE ADJUSTMENT 10/01/2008   942.58- WC
     82   7/17/2009   7/17/2009  NON CASH FEE ADJUSTMENT 10/01/2008   942.58- WC
     81   6/17/2009   6/17/2009  NON CASH FEE ADJUSTMENT 10/01/2008   942.58- WC
     80   5/17/2009   5/17/2009  NON CASH FEE ADJUSTMENT 10/01/2008   942.58- WC
     79   4/17/2009   4/17/2009  NON CASH FEE ADJUSTMENT 10/01/2008   942.58- WC
     78   3/17/2009   3/17/2009  NON CASH FEE ADJUSTMENT 10/01/2008   942.58- WC
     77   2/17/2009   2/17/2009  NON CASH FEE ADJUSTMENT 10/01/2008   942.58- WC
     76   1/17/2009   1/17/2009  NON CASH FEE ADJUSTMENT 10/01/2008   942.58- WC
     75  12/17/2008  12/17/2008  NON CASH FEE ADJUSTMENT 10/01/2008   942.58- WC
     74  11/17/2008  11/17/2008  NON CASH FEE ADJUSTMENT 10/01/2008   942.58- WC +

     F2=Switch F3=Exit F4=Prompt Info F6=Print Report F7=Sort Options F12=Return
```

```
LS0572RLC1                  Nationstar Mortgage LLC                 8/10/15
LBAL1034                     Transaction History                  11:47:01
Loan#: 0617935499  UnPaidBal: 5,708,783.86   Arm Flag: Y 9/01/2015
Borr1: HOOMAN MOSHAR                Property: 21 Skyridge
Borr2:                                        NEWPORT COAST, CA 92657
Info Available: Account Information Extensions Corporate Advances Message Codes
                Escrow Inf CTS PTPY Suspense Ttl Fees Disbursements
                                                                       SF
 Trn#  Posted    Effective        Description        Next Due  Total Amt  Code

  73 10/17/2008 10/17/2008 NON CASH FEE ADJUSTMENT 10/01/2008     942.58- WC
  72 11/17/2013 11/17/2013 LATE FEE ASSESSED        10/01/2008     942.58  ___
  71 10/17/2013 10/17/2013 LATE FEE ASSESSED        10/01/2008     942.58  ___
  70  9/17/2013  9/17/2013 LATE FEE ASSESSED        10/01/2008     942.58  ___
  69  8/17/2013  8/17/2013 LATE FEE ASSESSED        10/01/2008     942.58  ___
  68  7/17/2013  7/17/2013 LATE FEE ASSESSED        10/01/2008     942.58  ___
  67  6/17/2013  6/17/2013 LATE FEE ASSESSED        10/01/2008     942.58  ___
  66  5/17/2013  5/17/2013 LATE FEE ASSESSED        10/01/2008     942.58  ___
  65  4/17/2013  4/17/2013 LATE FEE ASSESSED        10/01/2008     942.58  ___
  64  3/17/2013  3/17/2013 LATE FEE ASSESSED        10/01/2008     942.58  ___ +


 F2=Switch F3=Exit F4=Prompt Info F6=Print Report F7=Sort Options F12=Return
```

```
LS0572RLC1                Nationstar Mortgage LLC                   8/10/15
LBAL1034                  Transaction History                     11:47:01
Loan#: 0617935499  UnPaidBal: 5,708,783.86   Arm Flag: Y 9/01/2015
Borr1: HOOMAN MOSHAR           Property: 21 Skyridge
Borr2:                                NEWPORT COAST, CA  92657
Info Available: Account Information Extensions Corporate Advances Message Codes
                Escrow Inf CTS PTPY Suspense Ttl Fees Disbursements
                                                                      SF
     Trn#   Posted       Effective       Description        Next Due     Total Amt  Code

      63  2/17/2013    2/17/2013  LATE FEE ASSESSED       10/01/2008      942.58   __
      62  1/17/2013    1/17/2013  LATE FEE ASSESSED       10/01/2008      942.58   __
      61 12/17/2012   12/17/2012  LATE FEE ASSESSED       10/01/2008      942.58   __
      60 11/17/2012   11/17/2012  LATE FEE ASSESSED       10/01/2008      942.58   __
      59 10/17/2012   10/17/2012  LATE FEE ASSESSED       10/01/2008      942.58   __
      58  9/17/2012    9/17/2012  LATE FEE ASSESSED       10/01/2008      942.58   __
      57  8/17/2012    8/17/2012  LATE FEE ASSESSED       10/01/2008      942.58   __
      56  7/17/2012    7/17/2012  LATE FEE ASSESSED       10/01/2008      942.58   __
      55  6/17/2012    6/17/2012  LATE FEE ASSESSED       10/01/2008      942.58   __
      54  5/17/2012    5/17/2012  LATE FEE ASSESSED       10/01/2008      942.58   __ +


F2=Switch F3=Exit F4=Prompt Info F6=Print Report F7=Sort Options F12=Return
```

```
LS0572RLC1                  Nationstar Mortgage LLC                8/10/15
LBAL1034                      Transaction History                 11:47:01
Loan#: 0617935499  UnPaidBal: 5,708,783.86   Arm Flag: Y 9/01/2015
Borr1: HOOMAN MOSHAR                 Property: 21 Skyridge
Borr2:                                         NEWPORT COAST, CA 92657
Info Available: Account Information Extensions Corporate Advances Message Codes
                Escrow Inf CTS PTPY Suspense Ttl Fees Disbursements
```

| | | | | | | SF |
|---|---|---|---|---|---|---|
| Trn# | Posted | Effective | Description | Next Due | Total Amt | Code |
| 53 | 4/17/2012 | 4/17/2012 | LATE FEE ASSESSED | 10/01/2008 | 942.58 | __ |
| 52 | 3/17/2012 | 3/17/2012 | LATE FEE ASSESSED | 10/01/2008 | 942.58 | __ |
| 51 | 2/17/2012 | 2/17/2012 | LATE FEE ASSESSED | 10/01/2008 | 942.58 | __ |
| 50 | 1/17/2012 | 1/17/2012 | LATE FEE ASSESSED | 10/01/2008 | 942.58 | __ |
| 49 | 12/17/2011 | 12/17/2011 | LATE FEE ASSESSED | 10/01/2008 | 942.58 | __ |
| 48 | 11/17/2011 | 11/17/2011 | LATE FEE ASSESSED | 10/01/2008 | 942.58 | __ |
| 47 | 10/17/2011 | 10/17/2011 | LATE FEE ASSESSED | 10/01/2008 | 942.58 | __ |
| 46 | 9/17/2011 | 9/17/2011 | LATE FEE ASSESSED | 10/01/2008 | 942.58 | __ |
| 45 | 8/17/2011 | 8/17/2011 | LATE FEE ASSESSED | 10/01/2008 | 942.58 | __ |
| 44 | 7/17/2011 | 7/17/2011 | LATE FEE ASSESSED | 10/01/2008 | 942.58 | __ + |

```
F2=Switch F3=Exit F4=Prompt Info F6=Print Report F7=Sort Options F12=Return
```

```
LS0572RLC1                 Nationstar Mortgage LLC                8/10/15
LBAL1034                   Transaction History                  11:47:01
Loan#: 0617935499  UnPaidBal: 5,708,783.86   Arm Flag: Y  9/01/2015
Borr1: HOOMAN MOSHAR              Property: 21 Skyridge
Borr2:                                     NEWPORT COAST, CA 92657
Info Available: Account Information Extensions Corporate Advances Message Codes
                Escrow Inf CTS PTPY Suspense Ttl Fees Disbursements
                                                                      SF
    Trn#  Posted       Effective    Description      Next Due   Total Amt  Code

     43  6/17/2011   6/17/2011  LATE FEE ASSESSED   10/01/2008    942.58  ___
     42  5/17/2011   5/17/2011  LATE FEE ASSESSED   10/01/2008    942.58  ___
     41  4/17/2011   4/17/2011  LATE FEE ASSESSED   10/01/2008    942.58  ___
     40  3/17/2011   3/17/2011  LATE FEE ASSESSED   10/01/2008    942.58  ___
     39  2/17/2011   2/17/2011  LATE FEE ASSESSED   10/01/2008    942.58  ___
     38  1/17/2011   1/17/2011  LATE FEE ASSESSED   10/01/2008    942.58  ___
     37 12/17/2010  12/17/2010  LATE FEE ASSESSED   10/01/2008    942.58  ___
     36 11/17/2010  11/17/2010  LATE FEE ASSESSED   10/01/2008    942.58  ___
     35 10/17/2010  10/17/2010  LATE FEE ASSESSED   10/01/2008    942.58  ___
     34  9/17/2010   9/17/2010  LATE FEE ASSESSED   10/01/2008    942.58  ___ +


F2=Switch F3=Exit F4=Prompt Info F6=Print Report F7=Sort Options F12=Return
```

```
LS0572RLC1               Nationstar Mortgage LLC              8/10/15
LBAL1034                  Transaction History               11:47:01
Loan#: 0617935499  UnPaidBal: 5,708,783.86   Arm Flag: Y  9/01/2015
Borr1: HOOMAN MOSHAR           Property: 21 Skyridge
Borr2:                                  NEWPORT COAST, CA 92657
Info Available: Account Information Extensions Corporate Advances Message Codes
                Escrow Inf CTS PTPY Suspense Ttl Fees Disbursements
                                                                     SF
 Trn#  Posted      Effective      Description       Next Due   Total Amt  Code

  33  8/17/2010   8/17/2010  LATE FEE ASSESSED    10/01/2008    942.58    __
  32  7/17/2010   7/17/2010  LATE FEE ASSESSED    10/01/2008    942.58    __
  31  6/17/2010   6/17/2010  LATE FEE ASSESSED    10/01/2008    942.58    __
  30  5/17/2010   5/17/2010  LATE FEE ASSESSED    10/01/2008    942.58    __
  29  4/17/2010   4/17/2010  LATE FEE ASSESSED    10/01/2008    942.58    __
  28  3/17/2010   3/17/2010  LATE FEE ASSESSED    10/01/2008    942.58    __
  27  2/17/2010   2/17/2010  LATE FEE ASSESSED    10/01/2008    942.58    __
  26  1/17/2010   1/17/2010  LATE FEE ASSESSED    10/01/2008    942.58    __
  25 12/17/2009  12/17/2009  LATE FEE ASSESSED    10/01/2008    942.58    __
  24 11/17/2009  11/17/2009  LATE FEE ASSESSED    10/01/2008    942.58    __ +


 F2=Switch F3=Exit F4=Prompt Info F6=Print Report F7=Sort Options F12=Return
```

```
LS0572RLC1                    Nationstar Mortgage LLC                 8/10/15
LBAL1034                        Transaction History                 11:47:01
Loan#: 0617935499   UnPaidBal: 5,708,783.86   Arm Flag: Y 9/01/2015
Borr1: HOOMAN MOSHAR              Property: 21 Skyridge
Borr2:                                     NEWPORT COAST, CA  92657
Info Available: Account Information Extensions Corporate Advances Message Codes
                Escrow Inf CTS PTPY Suspense Ttl Fees Disbursements
                                                                        SF
    Trn#  Posted      Effective       Description      Next Due   Total Amt  Code

     23 10/17/2009 10/17/2009 LATE FEE ASSESSED     10/01/2008    942.58   __
     22  9/17/2009  9/17/2009 LATE FEE ASSESSED     10/01/2008    942.58   __
     21  8/17/2009  8/17/2009 LATE FEE ASSESSED     10/01/2008    942.58   __
     20  7/17/2009  7/17/2009 LATE FEE ASSESSED     10/01/2008    942.58   __
     19  6/17/2009  6/17/2009 LATE FEE ASSESSED     10/01/2008    942.58   __
     18  5/17/2009  5/17/2009 LATE FEE ASSESSED     10/01/2008    942.58   __
     17  4/17/2009  4/17/2009 LATE FEE ASSESSED     10/01/2008    942.58   __
     16  3/17/2009  3/17/2009 LATE FEE ASSESSED     10/01/2008    942.58   __
     15  2/17/2009  2/17/2009 LATE FEE ASSESSED     10/01/2008    942.58   __
     14  1/17/2009  1/17/2009 LATE FEE ASSESSED     10/01/2008    942.58   __ +


F2=Switch F3=Exit F4=Prompt Info F6=Print Report F7=Sort Options F12=Return
```

```
LS0572RLC1                  Nationstar Mortgage LLC                    8/10/15
LBAL1034                     Transaction History                     11:47:01
Loan#: 0617935499  UnPaidBal: 5,708,783.86   Arm Flag: Y  9/01/2015
Borr1: HOOMAN MOSHAR              Property: 21 Skyridge
Borr2:                                     NEWPORT COAST, CA  92657
Info Available: Account Information Extensions Corporate Advances Message Codes
                Escrow Inf CTS PTPY Suspense Ttl Fees Disbursements
                                                                        SF
     Trn#  Posted      Effective      Description        Next Due   Total Amt  Code

       13 12/17/2008 12/17/2008 LATE FEE ASSESSED      10/01/2008     942.58   __
       12 11/17/2008 11/17/2008 LATE FEE ASSESSED      10/01/2008     942.58   __
       11 10/17/2008 10/17/2008 LATE FEE ASSESSED      10/01/2008     942.58   __
       10 12/05/2013 12/01/2013 NEW LOAN NOCASH        10/01/2008 5708783.86-  LB




     F2=Switch F3=Exit F4=Prompt Info F6=Print Report F7=Sort Options F12=Return
```

EXHIBIT G

# EXHIBIT G

EXHIBIT G

Branch :LSN,User :1900                    Comment:                              Station Id :NY8X

LANDSAFE TITLE

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

RECORDING REQUESTED BY:
RECONTRUST COMPANY
AND WHEN RECORDED MAIL DOCUMENT
AND TAX STATEMENTS TO:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA  93063

12.00

2009000637192 08:00am 11/25/09

166 402 A32 2

0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

RECORDING REQUESTED BY:
DFS
ON BEHALF OF: LS - SV

TS No. 09-0153484

9-4-40331l

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## CORPORATION ASSIGNMENT OF DEED OF TRUST/MORTGAGE

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFER TO:

THORNBURG MORTGAGE SECURITIES TRUST 2007-3

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 05/25/2006, EXECUTED BY:
HOOMAN MOSHAR, A MARRIED MAN AS HIS SOLE & SEPARATE PROPERTY.TRUSTOR: TO RECONTRUST
COMPANY, N.A., TRUSTEE AND RECORDED AS INSTRUMENT NO. 2006000365535 ON 05/31/2006, OF
OFFICIAL RECORDS IN THE COUNTY RECORDER'S OFFICE OF ORANGE COUNTY, IN THE STATE OF
CALIFORNIA.

DESCRIBING THE LAND THEREIN:  AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE MONEY DUE AND
TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS ACCRUED OR TO ACCRUE UNDER SAID
DEED OF TRUST/MORTGAGE.

DATED:        OCT 0 9 2009              MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

State of:        CA              )
County of:       Ventura         )       BY:  _____
                                               Abraham Bartamian, Assistant Secretary

On 10-1-19 before me, Elizabeth Lopez , notary public, personally appeared
Abraham Bartamian , who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____ (Seal)
Elizabeth Lopez

ELIZABETH LOPEZ
Commission # 1701666
Notary Public - California
Los Angeles County
My Comm. Expires Oct 30, 2010

Form asgnmnt (01/09)

ORANGE,CA
Document: AS 2009.637192

Page 1 of 2

Printed on 6/3/2011 7:43:51 AM

Branch :LSN,User :1900                    Comment:                                    Station Id :NY8X

GOVERNMENT CODE 27361.7

I cerify under penealty that the Notary Seal on the document to which this statement is
attached reads as follows:

NAME OF NOTARY: _____Elizabeth Lopez_____

DATE COMISSION EXPIRES: ___Oct. 29, 2010_____

COUNTY WHERE BOND IS FILED: __Los Angeles._____

COMISSION NUMBER: __1701666___   VENDOR NUMBER: __NNA2___

I certify under penealty of perjury and the laws of the State of California that the illiegible
portion of this document to which this statement is attached reads as follows:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

subscribed to the within Instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized

Personally know to me (or proved to me on the basis of satisfactoy evidence) to be the
person(s) whose name(s) is/ are capacity (ies), and that by his/her/their signature (s) on
the instrument the person(s) or entity upon behalf of which the person(s) acted,executed
the instrument.

PLACE OF EXECUTION: ____Orange____

SIGNATURE: _____   DATE: _11_ / _24_ / _2009_

EXHIBIT H

# EXHIBIT H

EXHIBIT H

Recording Requested By:
KEYSTONE PACIFIC PROPERTY
MANAGEMENT, INC.

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

6.00

2009000095766 03:11pm 03/02/09

111 159 N16 1
0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

And When Recorded Mail To:
PELICAN CREST II COMMUNITY ASSOCIATION
c/o Keystone Pacific Property Management, Inc.
16845 Von Karman, Suite 200
Irvine, CA 92606

Account No: P457-01012-3 ME

## NOTICE OF DELINQUENT ASSESSMENT

This NOTICE OF DELINQUENT ASSESSMENT (the "Notice") is being given pursuant to California Civil Code Section 1367 et. seq. and the provisions of the Declaration of Covenants, Conditions and Restrictions (the "CC&Rs") of PELICAN CREST II COMMUNITY ASSOCIATION, a California non-profit corporation (the "Association").

Declaration of CC&Rs recorded October 9, 1998 as Instrument No: 19980687222 Book: N/A  Page: N/A
County of ORANGE, State of California

The description of the common interest development unit against which this Notice is being recorded is as follows:
        LOT 12 OF TRACT NO. 15604, IN BOOK 773, PAGES 1 THROUGH 9, INCLUSIVE OF MISCELLANEOUS MAPS, IN
        THE OFFICE OF THE COUNTY OF ORANGE, STATE OF CALIFORNIA

The reputed owner(s) is/are:        SEMAR VENTURES, LLC

Common Address:        21 SKYRIDGE
                       NEWPORT COAST, CA 92657

Owner's mailing address is:        21 SKYRIDGE
                                   NEWPORT COAST, CA 92657

### DELINQUENCY

Assessments due for:  10/01/08 TO 3/01/09        $2785.02
Other assessments, interest, late charges and costs:        $666.28
TOTAL AMOUNT OF DELINQUENCY:        $3451.30

Additional monies shall accrue under this claim at the rate of the Association's monthly or special assessments, plus permissible late charges, costs of collection and interest, if any, that shall accrue subsequent to the date of this Notice. Request is made that any Notice of Default or Notice of Sale hereunder be sent to the above common address and/or mailing address. Should the Association elect to have the lien created by this Notice enforced by non-judicial foreclosure and sale as provided in Civil Code Section 1367(d), the trustee authorized to enforce the lien by sale shall be:

WITKIN & NEAL, LLC.                         PELICAN CREST II COMMUNITY ASSOCIATION
530 S. GLENOAKS BOULEVARD #207              a California non-profit corporation
BURBANK, CA 91502                           By: KEYSTONE PACIFIC PROPERTY MANAGEMENT, INC.
Dated: February 27, 2009                    a California corporation, its Managing Agent

                                            By: _Gerald R Kay_
State of California  )                      GERALD R. KAY
County of Orange  )                         CHIEF FINANCIAL OFFICER

On February 27, 2009 before me, LAURIE A. NELMS, a notary public, personally appeared GERALD R. KAY who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public  _Laurie A Nelms_        LAURIE A. NELMS

LAURIE A. NELMS
Commission # 1717477
Notary Public - California
Orange County
My Comm. Expires Jun 16, 2011

Order: 140128137 Doc: OR:2009 00095766        Page 1 of 1        Created By: nagendrak  Printed: 6/24/2014 4:39:58 PM PST

EXHIBIT I

# EXHIBIT I

EXHIBIT I

RECORDING REQUESTED BY,
AND WHEN RECORDED MAIL TO:

NEWPORT COAST COMMUNITY ASSOCIATION
C/O ASSESSMENT MANAGEMENT SERVICES
1 POLARIS WAY, SUITE 100
ALISO VIEJO, CA  92656

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

15.00

2009000242314 10:58am 05/14/09

200 32 N16  4
0.00  0.00  0.00  0.00  9.00  0.00  0.00  0.00



---

| NE-COA  0969-05 | NOTICE OF DELINQUENT ASSESSMENT |

*In accordance with California Civil Code section 1367.1, and Article V of the Declaration of Restrictions recorded on May 24, 1991 as Instrument No. 91-257521 of Official Records of Orange County, California, and effective on the date of recordation of this notice, the* **NEWPORT COAST COMMUNITY ASSOCIATION** *has a lien on the property described below in Paragraph 1, in the amount listed in Paragraph 3.*

1.   The property against which the lien is imposed is commonly referred to as: APN # 473-142-12, located at 21 Skyridge, Newport Beach, CA 92657, and more particularly described as: Lot 12 of Tract 15604, as shown on a Map recorded in Book 773, Pages 1 to 9, in the office of the County Recorder of Orange County.

2.   The owner(s) of record of the property described in Paragraph 1 is(are): **SEMAR VENTURES LLC,** a Nevada Limited Liability Company

3.   The amount due under this assessment lien is:    $        1,257.16

   **SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.**

   **and such future sums which may accrue under the terms of the CC&R's.**

4.   The name and address of the trustee authorized to enforce the lien is Feldsott & Lee, 4 San Joaquin Plaza, Suite #300, Newport Beach, CA 92660.

Date:    March 30, 2009

Board of Directors of:
NEWPORT COAST
COMMUNITY ASSOCIATION

By:_____    WILLIAM TURNER

By:
   ASSESSMENT MANAGEMENT SERVICES
   *Agent for Homeowners Association*

FINANCIAL SERVICES MANAGER

---

EXHIBIT "A"

03/30/2009  4:17 PM

Payment History Report
NEWPORT COAST COMMUNITY
Starting Date 03/30/2009

Page:  1

All Balances

ASSOC:   NE-COA   NEWPORT COAST MASTER

Management Co: MERIT PROPERTY MANAGEMENT, INC
1 POLARIS WAY SUITE 100
ALISO VIEJO, CA  92656

| Unit: Resident Comment | Status | Move In Batch No Date | Late Fees Type CC AC Description | NSF Checks | LT/UNT Address | Amount | Balance |
|---|---|---|---|---|---|---|---|
| 0969 02 SEMAR VENTURES LLC | C | 03/01/2007 | 002/26/2009  0 | | 12    21 SKYRIDGE | | |
| | 01647282 | 12/01/2008 CHG | 01 IP  ASSESSMENT | | | 85.00 | 79.00 |
| | 01665655 | | CRED  PP  Apply Open Credit | 12/16/2008 | | -6.00 | |
| | 01662904 | 01/01/2009 CHG | 01 IP  ASSESSMENT | | | 91.00 | 91.00 |
| | 01679301 | 02/01/2009 CHG | 01 IP  ASSESSMENT | | | 91.00 | 85.00 |
| | 01679302 | | CRED  AB  ABATEMENT | 02/01/2009 | | -6.00 | |
| | 01697210 | 03/01/2009 CHG | 01 IP  ASSESSMENT | | | 91.00 | 85.00 |
| | 01697211 | | CRED  AB  ABATEMENT | 03/01/2009 | | -6.00 | |
| | | | 01 Balance: | | | | 340.00 |
| | 01647282 | 12/01/2008 CHG | 03 IP  P CREST GATE COST NO | | | 153.00 | 153.00 |
| | 01662904 | 01/01/2009 CHG | 03 IP  P CREST GATE COST NO | | | 153.00 | 153.00 |
| | 01679301 | 02/01/2009 CHG | 03 IP  P CREST GATE COST NO | | | 153.00 | 153.00 |
| | 01697210 | 03/01/2009 CHG | 03 IP  P CREST GATE COST NO | | | 153.00 | 153.00 |
| | | | 03 Balance: | | | | 612.00 |
| | 01657182 | 12/02/2008 CHG | IT CR  IT PSTDUE ASMNTS | | | 0.15 | 0.15 |
| | 01673957 | 01/05/2009 CHG | IT CR  IT PSTDUE ASMNTS | | | 2.47 | 2.47 |
| | 01694304 | 02/05/2009 CHG | IT CR  IT PSTDUE ASMNTS | | | 5.01 | 5.01 |
| | 01709523 | 03/04/2009 CHG | IT CR  IT PSTDUE ASMNTS | | | 7.49 | 7.49 |
| | | | IT Balance: | | | | 15.12 |
| | 01673702 | 12/31/2008 CHG | LF CR  LATE FEE | | | 10.00 | 10.00 |
| | 01691655 | 01/31/2009 CHG | LF CR  LATE FEE | | | 10.00 | 10.00 |
| | 01709290 | 02/28/2009 CHG | LF CR  LATE FEE | | | 10.00 | 10.00 |
| | | | LF Balance: | | | | 30.00 |
| | 01633159 | 10/17/2008 CHG | LL CR  LIEN LTR W/ TITLE | | | 95.00 | 15.04 |
| | 01655672 | | PMT  LL CR  Lckbx Pmt | 11/26/2008 | | -79.96 | |
| | 01692364 | 02/03/2009 CHG | LL CR  LIEN LTR W/ TITLE | | | 95.00 | 95.00 |
| | | | LL Balance: | | | | 110.04 |
| | 01719309 | 03/20/2009 CHG | LN CR  LIEN | | | 150.00 | 150.00 |
| | | | LN Balance: | | | | 150.00 |

03/30/2009  4:17 PM                              Payment History Report                              Page:    2
                                                 NEWPORT COAST COMMUNITY
                                                 Starting Date 03/30/2009

                                                      All Balances

ASSOC:    NE-COA    NEWPORT COAST MASTER                   Management Co: MERIT PROPERTY MANAGEMENT, INC
                                                                          1 POLARIS WAY SUITE 100
                                                                          ALISO VIEJO, CA  92656

Unit Resident              Status Move In      Late Fees      NSF Checks    LT/UNT Address
         Comment           Batch No Date    Type CC AC  Description                            Amount      Balance
***************************************************************************************************************
.........................................................................................................
Balance:                                                                                                1,257.16

Exhibit B - Page 156

STATE OF CALIFORNIA        )
                                )
COUNTY OF ORANGE        )

On May 6, 2009 before me, A Kern, a Notary Public, personally appeared William Turner, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.



A Kern, Notary Public

A. KERN
Commission # 1732608
Notary Public · California
Orange County
My Comm. Expires Mar 18, 2011

EXHIBIT J

# EXHIBIT J

EXHIBIT J

Recorded in Official Records, Orange County

Tom Daly, Clerk-Recorder

24.00

2009000288559 01:19pm 06/04/09

109 73 D11 A36 4

0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

RECORDING REQUESTED BY:
LANDAMERICA SOUTHLAND TITLE

AND WHEN RECORDED MAIL TO:

Sima Noorahani
2916 E. Vine
Orange, CA  92869

Escrow No.: SA-118429-CWJ

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE

## DEED OF TRUST WITH ASSIGNMENT OF RENTS
### (LONG FORM)

This DEED OF TRUST, made Sept. 19, 2008, between SEMAR VENTURES LLC, a California Limited Liability Company, herein called TRUSTOR, whose address is 21 Skyridge, Newport Beach, CA,

Commonwealth Service Corp., a California Corporation, herein called TRUSTEE, and Sima Noorahani, an unmarried woman, herein called BENEFICIARY, WITNESSETH: That Trustor grants to Trustee in trust, with power of sale, that property in the City of Newport Beach, County of Orange, State of California, described as:

SEE EXHIBIT 'A' ATTACHED HERETO

In the event Trustor sells, conveys or alienates title to property described herein, whether voluntarily or involuntarily, all sums then owing under the Note secured hereby shall become immediately due and payable, at the option of the Holder(s) thereof.

This Deed of Trust secures the payment of a portion of the Purchase Price given for the property described herein, and is fourth and subject to a First and Second Deed of Trust now of record

Together with the rents, issues and profits thereof, subject, however, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits. For the Purpose of Securing (1) payment of the sum of $300,000.00 with interest thereon according to the terms of a promissory note or notes of even date herewith made by Trustor, payable to order of Beneficiary, and extensions or renewals thereof; (2) the performance of each agreement of Trustor incorporated by reference or contained herein and (3) Payment of additional sums and interest thereon which may hereafter be loaned to Trustor, or his successors or assigns, when evidenced by a promissory note or notes reciting that they are secured by this Deed of Trust.

To protect the security of this Deed of Trust, and with respect to the property above described, Trustor expressly makes each and all of the agreements, and adopts and agrees to perform and be bound by each and all of the terms and provisions set forth herein.

A.    TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES:

(1)    To keep said property in good condition and repair not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws effecting said property or requiring any alterations or improvements to be made thereon, not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2)    To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.



Page No. 2

(3)     .To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4)     To pay: at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5)     To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

B.     IT IS MUTUALLY AGREED:

(1)     That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such monies received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(2)     That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(3)     That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plate thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(4)     That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention or other disposition as Trustee in its sole discretion may choose and upon payment of its fees, Trustee shall reconvey, without warranty, the property then hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. *The Grantee in such reconveyance may be described as "the person or persons legally entitled thereto."*

(5)     That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuances of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues, and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(6)     That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale, Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

(7)     Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in

Exhibit B - Page 160

Page No. 3

168

writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties.  Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(8)	That this Deed applies to, insures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns.  The term Beneficiary shall mean the owner and holder, including pledges, of the note secured hereby, whether or not named as Beneficiary herein.  In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(9)	That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law.  Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

(10)	The Trusts created hereby are irrevocable by Trustor.

The undersigned Trustor, requests that a copy of any notice of default and any notice of sale hereunder be mailed to him at this address hereinbefore set forth.

Signature of Trustor

STATE OF CALIFORNIA
COUNTY OF   ORANGE                } ss.
On   SEPTEMBER 19, 2008   before me
LINDA J. PISANI, NOTARY PUBLIC
Notary Public, personally appeared
JOHN KIA

SEMAR VENTURES LLC

By: JOHN KIA, Manager

who  proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s), acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature
Signature of Notary

LINDA J. PISANI
COMM. # 1604595
NOTARY PUBLIC - CALIFORNIA
ORANGE COUNTY
COMM. EXPIRES SEPT. 5, 2009

(This area for official notarial seal)



**EXHIBIT "A"**

PARCEL 1:

LOT 12 OF TRACT NO. 15604, IN THE CITY OF NEWPORT BEACH,
COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP
RECORDED IN BOOK 773, PAGES 1 TO 9 INCLUSIVE OF
MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA,
AND AS AMENDED BY CERTIFICATE OF CORRECTION RECORDED JUNE
26, 2001 AS INSTRUMENT NO. 01-422896 OFFICIAL RECORDS

EXCEPT THEREFROM ALL OIL, OIL RIGHTS, MINERALS, MINERAL
RIGHTS, NATURAL GAS, NATURAL GAS, NATURAL GAS RIGHTS, OTHER
HYDROCARBONS AND ALL WATER BY WHATSOEVER NAME KNOWN THAT MAY
BE WITHIN OR UNDER SAID LAND TOGETHER WITH THE PERPETUAL
RIGHT OF DRILLING, MINING, EXPLORING AND OPERATING THEREFORE
AND REMOVING THE SAME FROM SAID LAND OR ANY OTHER LAND,
INCLUDING THE RIGHT TO WHIPSTOCK OR DIRECTIONALLY DRILL AND
MINE FROM LANDS OTHER THAT SAID LAND, OIL OR GAS WELLS,
TUNNELS AND SHAFTS INTO, THROUGH OR ACROSS THE SUBSURFACE OF
SAID LAND AND TO BOTTOM SUCH WHIPSTOCKED OR DIRECTIONALLY
DRILLED WELLS, TUNNELS AND SHAFTS UNDER AND BENEATH OR
BEYOND THE EXTERIOR LIMITS THEREOF AND TO REDRILL, RETUNNEL
, EQUIP, MAINTAIN, REPAIR, DEEPEN AND OPERATE ANY SUCH WELLS
OR MINES, WITHOUT HOWEVER, THE RIGHT TO DRILL MINE, EXPLORE
AND OPERATE THROUGH THE SURFACE OR THE UPPER 500 FEET OF THE
SUBSURFACE OF SAID LAND OR OTHERWISE IN SUCH MANNER AS TO
ENDANGER THE SAFETY OF ANY HIGHWAY THAT MAY BE CONSTRUCTED
ON SAID LANDS, AS RESERVED BY DEED RECORDED JANUARY 2, 1997
AS INSTRUMENT NO. 97-564 OFFICIAL RECORDS

PARCEL 2:

EASEMENTS AS SET FORTH IN THE SECTION ENTITLED "EASEMENTS
FOR OWNERS", "SUPPORT, SETTLEMENT AND ENCROACHMENT" AND
"UTILITIES AND CABLE TELEVISION" OF THE ARTICLE ENTITLED
"EASEMENTS AND OTHER RIGHTS OVER THE COVERED PROPERTY" OF
THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS
FOR PELICAN CREST II COMMUNITY ASSOCIATION, RECORDED OCTOBER
9, 1998 AS INSTRUMENT NO. 19980687222 OF OFFICIAL RECORDS OF
ORANGE COUNTY, CALIFORNIA (COLLECTIVELY, THE "DECLARATION")

**PROOF OF SERVICE**

*Thornburg Mortgage Securities Trust 2007-3, et al. v. Hooman Moshar, et al.*
*Orange County Central Justice Center Case No. 30-2014-00738233-CU-OR-CJC*

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 333 South Grand Avenue, Suite 2100, Los Angeles, California 90071.

On October 19, 2015, I served the foregoing document described as **DECLARATION OF DAN DICKEY IN SUPPORT OF APPLICATION FOR ENTRY OF DEFAULT JUDGMENT** on all interested parties in this action as follows:

| | |
|---|---|
| Marc I. Zussman, Esq.<br>LAW OFFICES OF MARC ZUSSMAN<br>10250 Constellation Blvd., Suite 2900<br>Los Angeles, CA  90067<br>Tel:    (310) 881-6804<br>Fax:    (310) 881-6805<br>E-mail: zussman@zussmansecuritieslaw.com | *Attorneys for Defendant*<br>*HOOMAN MOSHAR* |
| Newport Design Associates, Inc.<br>27422 Portola Parkway, Suite 340<br>Foothill Ranch, CA  92610 | *Defendant* |
| Real Time Resolutions, Inc.<br>c/o CT Corporation System, Agent<br>818 West Seventh Street, Suite #930<br>Los Angeles, CA  90017 | *Defendant*<br>*REAL TIME RESOLUTIONS, INC.* |
| Michael C. Fettig, Esq.<br>BERDING & WEIL LLP<br>575 Anton Boulevard, Suite 460<br>Costa Mesa, CA  92626<br>Tel:    (714) 429-0600<br>Fax:    (714) 429-0699 | *Attorneys for Defendant*<br>*PELICAN CREST II COMMUNITY*<br>*ASSOCIATION* |
| Nancy Michael, Esq.<br>NEULAND, WHITNEY & MICHAEL<br>22342-A Avenida Empresa, Suite 100<br>Rancho Santa Margarita, CA  92688<br>Tel:    (949) 766-4700<br>Fax:    (949) 766-4712 | *Attorneys for Defendant*<br>*NEWPORT COAST COMMUNITY ASSOC.* |
| Sima Noorahani<br>28652 Deepcreek<br>Mission Viejo, CA  92692 | *Defendant* |
| Amy A. Mousavi, Esq.<br>MOUSAVI LAW GROUP, APC<br>2020 Main Street, Suite 900<br>Irvine, CA  92614<br>Tel:    (949) 622-8980<br>Fax:    (949) 622-8985<br>Email: amousavi@mousavilagroup.com | *Attorneys for Defendant*<br>*SEMAR VENTURES LLC* |

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1

2

3

4

☒ **(BY MAIL)** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal Service on the same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing on affidavit.

5

☐ **(BY PERSONAL SERVICE)** I caused to be delivered such envelope by hand to the offices of the addressee via Janney & Janney court services.

6

7

☐ **(BY ELECTRONIC MAIL)** By consent of recipients listed on the attached service list, I caused the above-named document to be served via e-mail.

8

☐ **(BY ELECTRONIC SERVICE)** By E-filing and transmission of the above-listed document on all parties via the CM/ECF system with the Court.

9

☐ **(BY OVERNIGHT SERVICE)** Via Federal Express.

10

11

☐ **(BY FACSIMILE)** By transmitting in true copy thereof by facsimile from facsimile number (213) 457-1850 to the facsimile number(s) shown above.

12

☒ (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

13

Executed on October 19, 2015, at Los Angeles, California.

14

15

16

LYNN SPENCER

17

18

19

20

21

22

23

24

25

26

27

28

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

2

PAS01\774557.1
ID\LSO - 084912\000418

Exhibit B - Page 164

# PROOF OF SERVICE OF DOCUMENT
In Re:  Semar Ventures, LLC – Case No. 2:15-bk-12851-RN

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  333 S. Grand Avenue, Suite 2100, Los Angeles, CA  90071

A true and correct copy of the foregoing document entitled (specify):  **SUBMISSION OF DECLARATIONS IN SUPPORT OF MOTION FOR RELIEF FROM STAY**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) 12/10/2015, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Lynda T Bui on behalf of Trustee David M Goodrich (TR) - lbui@shbllp.com
- David M Goodrich (TR) - GoodrichTrustee@sulmeyerlaw.com, c143@ecfcbis.com
- Merdaud Jafarnia on behalf of Creditor CitiMortgage, INC., its assignees and/or successors - bknotice@mccarthyholthus.com, mjafarnia@ecf.inforuptcy.com
- Merdaud Jafarnia on behalf of Creditor Wells Fargo Bank, N.A. successor by merger to Wells Fargo Bank Minnesota, N.A., f/k/a Norwest Bank Minnesota, N.A., solely as Trustee for Structured Asset Mortgage Investments II Inc. Bear Stearns Mor - bknotice@mccarthyholthus.com, mjafarnia@ecf.inforuptcy.com
- Merdaud Jafarnia on behalf of Creditor Wells Fargo Bank, N.A., as trustee, on behalf of the holders of Structured Asset Mortgage Investments II, Inc., Bear Stearns Mortgage Funding Trust 2006-AR5, Mortgage Pass-Through Certificates, Series - bknotice@mccarthyholthus.com, mjafarnia@ecf.inforuptcy.com
- Gregory K Jones on behalf of Creditor Nationstar Mortgage, LLC - GJones@dykema.com, CPerez@dykema.com
- Melissa Davis Lowe on behalf of Trustee David M Goodrich (TR) - mdavis@shbllp.com, lverstegen@shbllp.com
- Matthew D Resnik on behalf of Debtor Semar Ventures LLC - matt@srhlawfirm.com, mattecf@gmail.com; renee@srhlawfirm.com
- Leonard M Shulman on behalf of Trustee David M Goodrich (TR) - lshulman@shbllp.com
- United States Trustee (LA) - ustpregion16.la.ecf@usdoj.gov

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (date) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

F 9013-3.1.PROOF.SERVICE

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**
(state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date)
12/10/2015, I served the following persons and/or entities by personal delivery, overnight mail service, or (for
those who consented in writing to such service method), by facsimile transmission and/or email as follows.
Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will
be completed no later than 24 hours after the document is filed.

The Hon. Richard M. Neiter – VIA FEDERAL EXPRESS
U.S. Bankruptcy Court, Central District of California
255 E. Temple Street, Suite 1652 / Courtroom 1645
Los Angeles, CA  90012

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 12/10/2015 | CATHY PEREZ | /s/ Cathy Perez |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

4812-4153-6044.1
084912\000418

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CALIFORNIA 90071

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.